GOMPERTS ET AL. *v.* CHASE ET AL.

No. A–245. Decided September 10, 1971

See: 329 F. Supp. 1192.

MR. JUSTICE DOUGLAS, Circuit Justice.

I have reluctantly concluded to deny the motion for a preliminary injunction. Though the equities are on the side of the applicants, the application comes late, the school year opens Monday next, and the alternative to the present inadequate plan may be complete confusion. An opinion is being filed in Washington, D. C.

William O. Douglas
Yakima, Washington

This case—before me on a motion for a preliminary injunction which both the District Court and the Court of Appeals for the Ninth Circuit have denied—presents novel and unresolved issues of constitutional law, which have been argued at the hearing this day at Yakima, Washington. The Board of Trustees of Sequoia Union High School District in San Mateo County, California, designed and approved a high school integration plan dated June 24, 1970, to become effective September 13, 1971, when the school year opens. It was designed to effect the substantial integration of blacks, Chicanos,

and whites. The county was divided in opinion on the matter, and as the result of an election in the spring of 1971, new school trustees were chosen who helped make up a new majority which modified the Board's earlier action. That is the plan of the Board, dated July 7, 1971. It is argued that the modifications will substantially restore the prior-existing segregated high school regime. It is said in reply that the modified plan is based on voluntary transfers which it is hoped will mean that some 600 whites will move into black schools and some 400 blacks will move into white schools. The mandatory aspect of the June 24, 1970, plan was suspended for the school year 1971–1972. This action was brought by blacks and whites under 42 U. S. C. § 1983 and 28 U. S. C. § 1343 to end the racially segregated school regime. The case has not been heard on the merits and, as I have indicated, the new school year starts in less than a week.

If this were the classical *de jure* school segregation, the injunction plainly should be granted. But the precise contours of *de jure* segregation have not been drawn by the Court. Historically, it meant the existence of state-created dual school systems. That is to say, *de jure* segregation was a mandate by the legislature, carried into effect by a school board, whereby students were assigned to schools solely by race. *E. g., Gong Lum* v. *Rice*, 275 U. S. 78; *Cumming* v. *Richmond County Board of Education*, 175 U. S. 528. As I indicated the other day in my opinion in *Guey Heung Lee* v. *Johnson, ante*, p. 1215, California had such a dual system until recent years. In the *Guey Heung Lee* case it was apparent that the force of that custom had not been spent even though the statute providing for the establishment of separate schools had been repealed, because the San Francisco School Board continued meticulously to draw racial lines in spite of the repeal of the statute.

So far as I can tell, a different history has prevailed in San Mateo County, or at least it is not apparent from this record that California's earlier dual school system shaped the existing San Mateo school system. The main argument now is that other state action created *de jure* segregation in San Mateo County:

(1) California's Bayshore Freeway effectively isolated the blacks and resulted in a separate and predominantly black high school.

(2) State planning groups fashioned and built the black community around that school.

(3) Realtors—licensed by the State—kept "white property" white and "black property" black.

(4) Banks chartered by the State shaped the policies that handicapped blacks in financing homes other than in black ghettoes.

(5) Residential segregation, fostered by state enforced restrictive covenants, resulted in segregated schools.

Whether any of these factors add up to *de jure* segregation in the sense of that state action we condemned in *Brown* v. *Board of Education,* 347 U. S. 483, is a question not yet decided.

If I assume, *arguendo,* that they do not establish *de jure* segregation, another troublesome question remains. There can be *de facto* segregation without the State's being implicated in the actual creation of the dual system. But even when there is *de facto* segregation, the problem is not necessarily resolved.

*Plessy* v. *Ferguson,* 163 U. S. 537, decided in 1896, held that public facilities could be separate for the races provided they were equal. If San Mateo County maintains a public school for blacks that is not equal to the one it maintains for whites, is there a remedy? There is a showing here that the State is maintaining a

segregated school system for the blacks and Chicanos that is inferior to the schools it maintains for the whites.

Prior to *Brown* v. *Board of Education,* we held over and again that a black offered inferior public education to that which the State gave the whites must be admitted to the white school. *McLaurin* v. *Oklahoma State Regents,* 339 U. S. 637; *Sweatt* v. *Painter,* 339 U. S. 629; *Sipuel* v. *Board of Regents of the University of Oklahoma,* 332 U. S. 631; *Missouri ex rel. Gaines* v. *Canada,* 305 U. S. 337.

Must not a school board fashion a plan that makes the majority race, and not the minority races alone, share in the unequal facilities designed by the State for part of its educational regime and make sure that the minorities, to the extent feasible, have the opportunity to share the superior facilities with the majority?

There is evidence in this case that Ravenswood High School—the one that is predominantly black—is an inferior school. In fact, the Department of Health, Education, and Welfare reported in 1969 that: "The quality of educational services and opportunities provided at Ravenswood High School does not meet the level of that provided in the other schools in the District." The California Association of School Administrators, the California School Boards Association, and the California Teachers Association in May 1969 made a similar report entitled Sequoia Union High School District. The plan of June 24, 1970, was designed to rectify that situation. The plan of July 7, 1971, however, modified the earlier plan and takes, at most, only minimal steps towards equalizing the educational opportunities at the district's high schools.

The remedies, if any, that are available where school segregation is *de facto* and not *de jure* are not yet clear. But *Plessy* v. *Ferguson* has not yet been overruled on its mandate that separate facilities be equal. Where

public schools for blacks or Chicanos are not equal to schools for whites, I see no answer to the argument that school boards can rectify the situation among the races by designing a system whereby the educational inequalities are shared by the several races. That seems to me to be an acceptable alternative to removing the inequalities through an upgrading of the subnormal school.

As I understand this case, the July 7, 1971, plan presumptively collides with the basic principle of equal protection expressed in *Plessy* v. *Ferguson*. Under normal circumstances the injunction should therefore issue. The difficulty is that this is September 10 and the San Mateo schools open on September 13. No one knows what plan would be substituted by the school board for the July 7, 1971, plan should I issue the stay. The June 24, 1970, plan is no longer a plan of the school board. The time is so short that further delay may indeed imperil the new school year. I have, therefore, reluctantly concluded that the lateness of the hour makes it inappropriate for me to grant the interim relief.

*It is so ordered.*