**George P. BAKER et al., Plaintiffs,**

v.

**Fidel GOTZ et al., Defendants.**

**Civ. A. Nos. 4072, 74–99 and 74–145.**

United States District Court,
D. Delaware.

June 4, 1976.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs; Morris L. Weisberg, of Blank, Rome, Klaus & Comisky, Philadelphia, Pa., of counsel.

Arthur G. Connolly, and Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for defendants; Saul L. Sherman, of Busby, Rivkin, Sherman, Levy & Rehm, New York City, of counsel.

## OPINION

STEEL, Senior District Judge:

In each of the above three cases defendants have moved for orders protecting and effectuating the "judgments" of the Court entered January 9, 1975. These "judgments", which are in reality denominated "orders", vacated earlier invalid sequestration orders obtained by plaintiffs under which property of defendants consisting of notes, warrants and debentures (hereinafter "notes") issued by three Delaware corporations and the "rights belonging and appertaining" thereto had been purportedly sequestered. The sequestration orders had been held to be invalid in *Baker v. Gotz*, 387 F.Supp. 1381 (D.Del.1975), *aff'd* by "Judgment Order", 523 F.2d 1050 (3d Cir. 1976) (*"Baker II"*).[1] Since the pending three motions involve substantially the same facts and their resolution involves the same principles, separate treatment of each motion is not required.

The sequestrator appointed under the invalid sequestration order was Jay H. Conner (hereinafter "federal sequestrator"). The monies which he received (interest, principal, etc.) on the sequestered notes were deposited by him in his name in the Wilmington Trust Company and for the most part were invested in securities. These securities were also held by the Wilmington Trust Company in the name of the federal sequestrator. The "monies" and

---

1. Plaintiffs' previous attempt to sequester the same property, among others, resulted in the vacation of the sequestration due to the insufficiency of the supporting affidavit. *Baker v. Gotz*, 336 F.Supp. 197 (D.Del.1971), *aff'd mem.*, 492 F.2d 1238 (3d Cir. 1974), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3084, 41 L.Ed.2d 674 (*"Baker I"*).

"securities" are hereafter sometimes collectively referred to as "funds".

On February 18, 1976, this Court entered an order pursuant to defendants' motion which authorized the federal sequestrator to turn over to defendants the funds which he and the Wilmington Trust Company held on October 28, 1975, for the reasons stated in *Baker v. Gotz*, 408 F.Supp. 238 (D.Del. 1976) ("*Baker III*"). Defendants' present motion is for an order authorizing the federal sequestrator to turn over to defendants the funds which he has received since October 28, 1975, no action as yet having been taken by the sequestrator to advise the issuers of the notes to cease making payments to him.

At root, the resistance of plaintiffs to defendants' pending motion, insofar as it seeks authorization for the federal sequestrator to turn over to defendants the funds received since October 28, 1975, rests upon a sequestration order entered by the Court of Chancery of Delaware on October 28, 1975, denominated *Blanchette, et al. v. Fidel Gotz, et al.*, Civil Action No. 4919, under which Jay H. Conner was appointed state sequestrator.[2] That order was obtained by plaintiffs in a suit brought by plaintiffs and those in privity with them against the defendants and a defendant in privity with them on substantially the same cause of action as the present litigation involves. The state court order purported to sequester the same notes as well as the "rights belonging and appertaining" thereto which were the subject of the sequestration order of this Court.

 The funds which came into the possession of the federal receiver since October 28, 1975, have all been deposited in his name in the Wilmington Trust Company. None were deposited in his name as state sequestrator. Furthermore, apart from the purported sequestration of the notes themselves (including the "rights belonging and appertaining" thereto) plaintiffs have taken no action in the state court to independent-

ly sequester the post-October 28, 1975, funds. Plaintiffs' argument that the sequestration of the funds under the state court order should be honored by this Court, and as a consequence a turnover order in defendants' favor should be denied rests solely upon the claim that the sequestration of the notes themselves, including the "rights belonging and appertaining" thereto, was valid under Delaware law. This conclusion is contrary to this Court's decision in *Baker II* which was affirmed by the Judgment Order of the Court of Appeals. There it·was held that the notes, being negotiable investment securities, were not sequesterable under the Uniform Commercial Code which was in effect in Delaware at the time when the purported sequestration was effected. The question of the propriety of entering a turnover·order with respect to the funds held by the federal sequestrator on and prior to October 28, 1975, was sustained in this Court's opinion of January 14, 1976, and was never appealed from. The purported state sequestration cannot operate as a seizure of the post-October 28, 1975, funds, based as it is upon the alleged validity of the sequestration of the notes, for this Court has already held that the notes cannot be validly sequestered in Delaware. Since the federal sequestration was invalid and the notes and funds have not been validly sequestered in the state court, the turnover order which defendants now seek with respect to the post-October 1975 funds should be entered.

In addition to the turnover order which will be entered, defendants' motion seeks an injunction ordering plaintiffs and others identified with them:

"(a) Not to commence, maintain or prosecute any action or proceeding in the State of Delaware in which they seek to sequester, attach, or otherwise seize any of the notes, warrants, or debentures purportedly sequestered in this action;

(b) Not to hinder or prevent or refuse to cooperate with defendants and their

---

**2.** The *Blanchette* action was begun between the date of the "judgment order" of the Court of Appeals of October 17, 1975, which affirmed

this Court's decision that the sequestration order was invalid, and November 25, 1975, when the mandate issued.

agents and attorneys or this Court in effecting the release or transfer of such notes, warrants or debentures from any sequestration in this action or in Civil Action No. 4919, in the Court of Chancery in and for the County of New Castle, Delaware, entitled *Blanchette, et al. v. Gotz, et al.*;

(c) To abandon and withdraw said Court of Chancery action insofar as it seeks to sequester the property purportedly sequestered herein;

(d) To take any and all action necessary or appropriate to effectuate or implement the foregoing; . . . ."

The plaintiffs argue that the Anti-Injunction Act, 28 U.S.C. § 2283, contains an absolute prohibition against this Court issuing the injunction which in effect will stay further proceedings in the state court under its sequestration order of October 28, 1975, as it applies to the notes involved in the present litigation. Section 2283 reads:

"A court of the United States may not grant an injunction to stay proceedings in a State Court *except* as expressly authorized by act of Congress, or *where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.*" (Emphasis supplied.)

Defendants on the other hand contend that section 2283 is not a bar because the injunction sought falls within the exceptions of the statute and is authorized by the All Writs Statute, 28 U.S.C. § 1651(a), which provides:

"The Supreme Court and all courts established by Act of Congress may issue *all writs* necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law." (Emphasis supplied.)

■ Section 2283 (formerly section 265 of the Judicial Code of 1911) must be construed in connection with section 1651 (formerly section 262 of the Judicial Code of 1911). *Kline v. Burke Construction Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922). Power to issue the injunction sought by plaintiffs is derived from the All Writs Statute. Although it in terms only refers to "all writs necessary or appropriate in aid of their respective jurisdictions", courts have interpreted it as authorizing injunctions to protect and effectuate their judgments. *Toledo Scale Company v. Computing Scale Company*, 261 U.S. 399, 426, 43 S.Ct. 458, 67 L.Ed. 719 (1923); *Ward v. Pennsylvania New York Central Transportation Co.*, 456 F.2d 1046 (2d Cir. 1972), aff'g 328 F.Supp. 1245 (S.D.N.Y.1971); *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971), cert. denied, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 30, reh. denied, 404 U.S. 996, 92 S.Ct. 532, 30 L.Ed.2d 549; *Teas v. Twentieth Century-Fox Film Corp.*, 413 F.2d 1263 (5th Cir. 1969); *Clinton v. United States*, 297 F.2d 899 (9th Cir. 1961); cf. *Federal Home Loan Bank of San Francisco v. Hall*, 225 F.2d 349, 385, n. 12 (9th Cir. 1955); see also *Toucey v. N. Y. Life Insurance Co.*, 314 U.S. 118, 142, 62 S.Ct. 139, 86 L.Ed. 100 (1941) (Reed, J. dissenting).[3]

The reliance which the plaintiffs place upon the prohibition of state action in section 2283 warrants a brief discussion of its history.[4] The origin of section 2283 is found in the Act of March 2, 1793; 1 Stat. 335. This provided that no "writ of injunction be granted [by any federal court] to stay proceedings in any court of a state." This law remained unchanged until 1874 when Rev.Stat. § 720 was enacted. This provided that a state proceeding could be enjoined "where such injunction may be authorized by any law relating to proceedings in bankruptcy." Despite this uncom-

---

3. The lower court in *Ward v. Pennsylvania New York Central Transportation Co.* stated that the power of a federal court to prevent vexatious litigation by enjoining state actions derives from an inherent power of the court and from the old equity Bill of Peace which has been codified in the All Writs Statute. 328

F.Supp. at 1247. The court in *Teas* also considered this an inherent power of courts of the United States. 413 F.2d at 1267.

4. This is conveniently set forth in *Mitchum v. Foster*, 407 U.S. 225, 231–36, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

promising language the courts recognized that, in addition to the bankruptcy law exception explicitly recognized in 1874, implied exceptions must be made to its blanket prohibition. One such implied exception was the "relitigation exception" under which a federal court was permitted to enjoin relitigation in a state court of issues already decided in federal litigation. This principle continued to be recognized until 1941, when *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, was decided. In it the court expressly disavowed the "relitigation exception" to the statute and held that section 265 of the Judicial Code of 1911 which embodied the 1874 version of the Anti-Injunction Statute constituted an absolute bar to a federal court enjoining a state court from relitigating a claim adjudicated by a federal court. Mr. Justice Reed wrote a dissenting opinion which was concurred in by Chief Justice Stone and Mr. Justice Roberts. Following the *Toucey* decision, Congress, in 1948, amended the statute as it stood when *Toucey* was decided by enacting section 2283 in its present form.

In referring to the *Toucey* decision and its aftermath, the Court in the *Mitchum* case said:

"In *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, [62 S.Ct. 139, 86 L.Ed. 100], the Court in 1941 issued an opinion casting considerable doubt upon the approach to the anti-injunction statute reflected in its previous decisions. The Court's opinion expressly disavowed the 'relitigation' exception to the statute, and emphasized generally the importance of recognizing the statute's basic directive ' "of hands off" by the federal courts in the use of the injunction to stay litigation in a state court.' 314 U.S., at 132, [62 S.Ct. 139]. The congressional response to *Toucey* was the enactment in 1948 of the anti-injunction statute in its present form in 28

U.S.C. § 2283, which, as the Reviser's Note makes evidence, served not only to overrule the specific holding of *Toucey*, but to restore 'the basic law as generally understood and interpreted prior to the *Toucey* decision.' " 407 U.S. at 236, 92 S.Ct. at 2159.

The Reviser's Note is quoted in part in the *Mitchum* case at p. 236, fn. 21, 92 S.Ct. at 2159, as follows:

"The exceptions specifically include the words 'to protect or effectuate its judgments,' for lack of which the Supreme Court held that the Federal courts are without power to enjoin relitigation of cases and controversies fully adjudicated by such courts. (See *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, [62 S.Ct. 139, 86 L.Ed. 100].) A vigorous dissenting opinion [314 U.S. 141, 62 S.Ct. 139] notes that at the time of the 1911 revision of the Judicial Code, the power of the courts . . . of the United States to protect their judgments was unquestioned and that the revisers of that code noted no change and Congress intended no change." [5]

In his dissenting opinion Mr. Justice Reed spoke of "the permeation of our law by the principle of protection of federal decrees by injunctions against prosecuting state suits which relitigated settled issues." 314 U.S. at 149, 62 S.Ct. at 152. The authorities prior to the *Toucey* decision were reviewed by Mr. Justice Reed (314 U.S. 141–154, 62 S.Ct. 139) from which he concluded:

"We think it may be accurately stated that for more than half a century there has been a widely accepted rule supporting the power of federal courts to prevent relitigation [in a state court]." 314 U.S. at 152–53, 62 S.Ct. at 153.

The power which Mr. Justice Reed found established by pre-1948 decisions is now made abundantly clear by the express ex-

---

**5.** In Note, Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1051 (1965) the authors state:

"The legislative history of section 2283 reveals that this phrase was inserted to enable

federal courts to enjoin relitigation in state courts, and thus reestablish the pre-*Toucey* law."

ceptions written into the 1948 amendment to section 2283. The anti-injunctive prohibition in section 2283 against a federal court staying state court action is thus inoperative where an injunction is "necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Defendants argue that the injunction which they seek is one which section 2283 authorizes since its object is "to protect and effectuate its judgment;" viz., the "Order" of January 9, 1975, affirmed by the Court of Appeals, which vacated the prior sequestration order.

Plaintiffs contend that the "Order" of January 9, 1975, was not a "judgment" within the contemplation of section 2283 since it was not a final judgment on the merits of the case which would have been *res judicata* if pleaded in the state court action. Even if the premise is valid (a matter as to which no view is expressed) the conclusion does not follow. Whether or not the state court would give the order *res judicata* effect is irrelevant. In *Toucey* Mr. Justice Reed pointed out in his dissent that questions of *res judicata* are inapposite when the power of a federal court to enjoin state action is the issue. He stated that *res judicata* depends upon state law whereas the meaning and application of a federal decree relevant to a determination whether it should be enforced by further federal action is essentially a federal question. As to the latter he said that the power to give effect to federal judgments rests with Congress which has exercised the power for general purposes by enacting the All Writs Statute, then section 262 of the Judicial Code of 1911, now 28 U.S.C. § 1651. 314 U.S. at 142, 62 S.Ct. 139.

█ The order of this Court, however, has sufficient finality to bring it within the section 2283 exception, assuming that finality of a judgment is required. In defining the word "judgments" in section 2283 some guidance may be found in the Federal Rules of Civil Procedure which became effective on March 19, 1948, three months before passage of the present section 2283. Rule 54(a) states that " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies." By this standard it is apparent that the Court's order of January 9, 1975, was a "judgment" within the meaning of Rule 54(a). An appeal was taken from the order and the October 17, 1975, judgment order of the Third Circuit affirmed "the *judgment* of the district court."

To understand why this decision short of the substantive merits constituted an appealable judgment, decisions dealing with the appealability of "final decisions" under 28 U.S.C. § 1291 are enlightening conceptually. In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) the question was whether a federal court, having jurisdiction of a stockholders' derivative action only because the parties were of diverse citizenship, must apply a statute of a forum state (New Jersey) which made the plaintiff, if unsuccessful, liable for reasonable expenses of the defense, including attorney's fees, and entitled the corporation to require a security for their payment. The district court held that the state enactment was not applicable to an action begun in the federal court, the Court of Appeals reversed, and the Supreme Court granted certiorari. At the threshold it was met with the plaintiff's contention that the order of the district court was not a "final decision" and hence under 28 U.S.C. § 1291 the Court of Appeals had no jurisdiction to reverse it. The Supreme Court held that it was appealable because "the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken." *Id.* at 546, 69 S.Ct. at 1225. The Court said that:

> "We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.
>
> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to,

rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.*

In *Swift & Co. Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the district court had vacated a foreign attachment in a libel *in personam.* The Court of Appeals affirmed and the Supreme Court granted certiorari. Again the court addressed itself to the threshold question whether the Court of Appeals had jurisdiction to entertain the appeal under 28 U.S.C. § 1291, defendant having claimed that the order vacating the attachment was not a final order and therefore not reviewable. The Court, relying upon the reasoning in *Cohen v. Beneficial Industrial Loan Corp., supra,* rejected this contention and held that the "final decision" language of section 1291 "should not be construed so as to deny effective review of a claim fairly severable from the context of a larger litigious process." *Id.* at 689, 69 S.Ct. at 865.

The case at bar involved the sequestration of property in an action seeking *in personam* relief. It is entirely analogous to the attachment of property involved in the *in personam* action in the *Swift* case. This Court's order that the sequestration should be vacated constituted a determination of a "claim fairly severable from the context of a larger litigious process". The reasoning of the Court in *Swift* which caused it to conclude that the order vacating the attachment was a "final decision" for purposes of appellate jurisdiction is equally applicable in the instant action and supports the conclusion that the order vacating the sequestration possessed such a degree of finality as to place it within the exceptions of section 2283, if indeed, as plaintiffs contend, finality of a decision is a prerequisite to the invocation of the exceptions. Since the order vacating the sequestration was an appealable "final decision" under 28 U.S.C. § 1291 and a "judgment" under Rule 54(a) it should also constitute a "judgment" for

purposes of the relitigation exception in 28 U.S.C. § 2283.

■ While a final judgment on the merits is an appropriate one for a federal court to protect and effectuate injunctively when inconsistent action in a state court is threatened, it has been suggested that an interlocutory or preliminary decree can be a basis for injunctive action against threatened and vexatious state litigation under the authority conferred by the All Writs Act and section 2283, because of its exceptions, is no obstacle. Note, Developments in the Law —Injunctions, 78 Harv.L.Rev. 994, 1051–52 (1965); *Sperry Rand Corporation v. Rothlein,* 288 F.2d 245, 248–49 (2d Cir. 1961). Although federal injunctions against state actions were held to be improper in *Hyde Construction Co. v. Koehring,* 388 F.2d 501 (10th Cir. 1968), *cert. denied,* 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419, and in *Commerce Oil Refining Corporation v. Miner,* 303 F.2d 125 (1st Cir. 1962), the Court in *Koehring* said that the exception in section 2283 may extend to interlocutory orders (p. 510), and in *Miner* the Court stated that an injunction may be proper to protect rights conferred by federal action short of a final judgment (p. 128). Since in this case the judgment in question is an appealable order, the Court need not attempt to resolve the uncertainty, if any, as to whether a non-appealable interlocutory order can be a "judgment" for purposes of the relitigation exception.

■ The issue of sequesterability of negotiable securities under Delaware law was litigated and decided by this Court and the Court of Appeals in favor of defendants. The policy of the law which permits a federal court to enjoin state court action when a federal court has decided a suit on its substantive merits has equal force when a critical underlying issue unrelated to the substantive merits of the action has been litigated to finality. In the latter case, no less than in the former, the reason for the rule exists; that is to protect the party who has succeeded in the federal court against

being put to the inconvenience and expense of relitigating the same issue and from being subject to the possibility of a contrary decision by the state court which would nullify or impair the effect of the federal judgment.

■ The repeated actions which plaintiffs have brought against defendants in which attempts have been made to sequester the same notes (see *Baker III,* 408 F.Supp. at 241, 244) justify the Court as a matter of discretion in enjoining plaintiffs from taking further action toward accomplishing the same end in the *Blanchette* case and elsewhere.

■ Only a brief word need be said about plaintiffs' argument that the present motion of defendants to protect and effectuate its order of January 9, 1975, should be denied because the action of the Court of Appeals in denying a comparable motion constitutes the law of the case. The prior action by the Court of Appeals to which the plaintiffs refer grew out of the following circumstances. On October 17, 1975, the Court of Appeals affirmed the order of this Court which vacated the earlier sequestration order plaintiffs had obtained. On October 28, 1975, plaintiffs began the *Blanchette* case in the Court of Chancery and obtained a sequestration order relating to the same property which the Court of Appeals had held to have been invalidly sequestered in the present action. Faced with further litigation on an issue which the Court of Appeals had just determined adversely to plaintiffs, defendants filed a motion in the Court of Appeals on November 6, 1975, requesting it to protect and effectuate *its* judgment order. This motion was decided without oral argument and without opinion on November 24, 1975. On the same day the Court of Appeals issued its mandate to this Court which simply affirmed the order of this Court vacating the sequestration order but said nothing about the order of the Court of Appeals which

denied the motion of the defendants to protect and effectuate the judgment of the Court of Appeals. The considerations which led the Court of Appeals to deny defendants' motion are unknown to this Court. *Cf. Kauffman v. Moss,* 420 F.2d 1270, (3d Cir. 1970), *cert. denied* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84. Certainly the Court of Appeals did not have and could not have had the detailed familiarity which this Court possesses concerning the continuation of plaintiffs' vexatious efforts to sequester the property which this Court and the Court of Appeals have held to be beyond the power of the plaintiffs to sequester under Delaware law. In any event, nothing in the mandate precludes this Court from giving consideration to the present motion. See *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

Other contentions of plaintiffs have either been dealt with adversely to them in *Baker III* or are without sufficient merit to warrant discussion.

In conclusion, it is emphasized that no injunction shall issue which will have the effect of enjoining plaintiffs from trying the merits of the *Blanchette* suit provided that jurisdiction satisfactory to the Court of Chancery is obtained over defendants or their property in some manner other than sequestration of the notes released from this Court's sequestration by its order of January 9, 1975.