**NATIONAL BASKETBALL ASSOCIATION; Atlanta Hawks, Ltd.; Capital Bullets Basketball Club, Inc.; Celtics, Limited Partnership; Charlotte NBA, Limited Partnership; Dallas Basketball, Limited; Denver Nuggets, Limited Partnership; Detroit Pistons Basketball Company; Golden State Warriors; Houston Rockets Professional Basketball Club, Ltd.; Jazz Basketball Investors, Inc.; LAC Basketball Club, Inc.; Los Angeles Lakers, Inc.; Madison Square Garden Corporation; Meadowlands Basketball Associates; Miami Heat, Limited Partnership; Milwaukee Bucks, Inc.; Nationwide Advertising Service, Inc.; Orlando Magic, Ltd.; Pacers Basketball Corporation; The Philadelphia 76ers Basketball Club, Inc.; Phoenix Suns, Limited Partnership; Sacramento Kings, Limited Partnership; San Antonio Spurs, Limited; Seattle Supersonics, Inc.; Trail Blazers, Inc., Plaintiffs–Appellees,**

v.

**MINNESOTA PROFESSIONAL BASKETBALL, LIMITED PARTNERSHIP; Marvin Wolfenson; Harvey Ratner; Defendants–Appellees,**

**Top Rank of Louisiana, Inc.; Defendant–Appellant,**

**Robert Arum; Fred Hofheinz; John O'Quinn; Robert A. Higley; Patrick Graham, Defendants.**

**NATIONAL BASKETBALL ASSOCIATION; Atlanta Hawks, Ltd.; Capital Bullets Basketball Club, Inc.; Celtics, Limited Partnership; Charlotte NBA, Limited Partnership; Dallas Basketball, Limited; Denver Nuggets, Limited Part-**

nership; Detroit Pistons Basketball Company; Golden State Warriors; Houston Rockets Professional Basketball Club, Ltd.; Jazz Basketball Investors, Inc.; LAC Basketball Club, Inc.; Los Angeles Lakers, Inc.; Madison Square Garden Corporation; Meadowlands Basketball Associates; Miami Heat, Limited Partnership; Milwaukee Bucks, Inc.; Nationwide Advertising Service, Inc.; Orlando Magic, Inc.; Pacers Basketball Corporation; The Philadelphia 76ers Basketball Club, Inc.; Phoenix Suns, Limited Partnership; Sacramento Kings, Limited Partnership; San Antonio Spurs, Limited; Seattle Supersonics, Inc.; Trail Blazers, Inc., Plaintiffs–Appellees,

v.

MINNESOTA PROFESSIONAL BASKETBALL, LIMITED PARTNERSHIP; Marvin Wolfenson; Harvey Ratner; Defendants–Appellees,

Top Rank of Louisiana, Inc.; Defendant–Appellant,

Robert Arum; Fred Hofheinz; Patrick Graham, Defendants.

Nos. 94–2697 MN, 94–2808 MN.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1994.

Decided May 30, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 14, 1995.*

---

* Loken and Murphy, Circuit Judges, took no part in the consideration or decision of this case.

Richard Allen Lockridge, argued, Minneapolis, MN (W. Joseph Bruckner and William A. Gengler, on the brief), for appellant.

Patrick J. Schiltz, argued, Minneapolis, MN (James Fitzmaurice, Daniel J. Connolly,

and Jason D. Topp, Minneapolis, MN, on the brief), for Minnesota Professional Basketball Ltd. Partnership.

Shepard Goldfein, argued, New York City, for Trail Blazers, Inc.

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

In these consolidated appeals, Top Rank of Louisiana, Inc. (Top Rank) challenges two district court orders granting preliminary injunctive relief to the National Basketball Association (NBA) in Top Rank's legal dispute with the Minnesota Professional Basketball Limited Partnership (MPBLP) and NBA over ownership and relocation of the Minnesota Timberwolves professional basketball team (Timberwolves). Essentially, the challenged orders keep the Timberwolves in Minnesota for the 1994–95 NBA season, relieve the NBA from enforcement of a state court preliminary injunction barring the season, stay proceedings in state court litigation brought by Top Rank against the MPBLP and NBA, and prohibit the federal court parties from participating in the state court litigation. We affirm in part, reverse in part, and remand for further proceedings.

In March 1994, the NBA began the lengthy process of scheduling the 1994–95 NBA season. The NBA needed to finalize the schedule by mid-July so the NBA's member teams could publicize playing dates, sell tickets, arrange radio and television contracts, make travel arrangements, and finish the many other necessary season preparations. On June 5, 1994, over two months into the scheduling process, the MPBLP, owner of the Timberwolves, signed an agreement to sell the Timberwolves to Top Rank. The agreement provided that Top Rank would relocate the team from Minnesota to New Orleans, Louisiana. Because the MPBLP and Timberwolves were members of the NBA, the agreement conditioned the sale and relocation on the NBA Board of Governors' approval.

On June 15, a committee of the NBA Board of Governors met with Top Rank to consider approving the agreement. At the meeting, Top Rank refused to disclose the source of several millions of dollars it planned to use to buy the Timberwolves. Based on the nondisclosure, the committee determined Top Rank's financial support was inadequate and voted to recommend that the NBA's full Board of Governors reject the agreement.

Within hours of the committee's vote, the NBA brought a lawsuit against the MPBLP and Top Rank in federal district court in Minnesota seeking a declaration that NBA permission was required before the Timberwolves could be sold or relocated. Because the NBA's nearly finalized 1994–95 season schedule was based on the Timberwolves' presence in Minnesota, the NBA also asked the court for a temporary restraining order and a preliminary injunction preventing the MPBLP and Top Rank from closing the sale and moving the team without the NBA's approval. In support of its requests, the NBA showed that it was too late in the scheduling process to move the Timberwolves without jeopardizing the upcoming 1994–95 basketball season. On June 16, the court ordered the MPBLP not to close the sale or move the team until the court ruled on the NBA's request for a restraining order.

Nearly a week later, on June 21, the full NBA Board of Governors adopted the committee's recommendation and rejected the agreement. That same day, the MPBLP terminated the agreement and filed a cross-claim against Top Rank in the district court. The MPBLP sought a declaration that it had rightfully terminated the agreement, and breach of contract damages for Top Rank's failure to secure NBA approval as the agreement required. On June 23, the district court temporarily restrained the MPBLP from closing the sale or moving the team until the court considered the NBA's request for a preliminary injunction.

On June 24, Top Rank filed a state court lawsuit against the MPBLP and NBA in Louisiana. Top Rank sought specific performance or damages from the MPBLP for breach of the agreement, and damages from the NBA for interference with the agreement. On June 28, the state court issued a ten-day temporary restraining order pre-

venting the NBA and all its member teams from finalizing the 1994–95 NBA season schedule.

On July 1, the district court granted the NBA's request for preliminary injunctive relief. The district court's order enjoined the MPBLP from selling the team to Top Rank or moving the team to New Orleans until the entry of a court order stating otherwise, the entry of final judgment, or June 15, 1995, whichever occurred first. The district court also enjoined the state court from conducting further proceedings in Top Rank's lawsuit and relieved the NBA from the state court's temporary restraining order, which expired by its own terms on July 8.

Relying on the Anti–Injunction Act, the state court rejected the district court's order and, on July 14, entered its own preliminary injunction preventing the NBA from preparing a schedule for the 1994–95 season. On July 19, the district court enjoined enforcement of the state court's preliminary injunction, barred future orders by the state court, prohibited the parties to the federal action from participating in Top Rank's lawsuit, and outlined stiff contempt sanctions for disobedience. Top Rank appeals both the district court's July 1 and July 19 orders.

We turn first to Top Rank's contention that the district court abused its discretion when the court enjoined the sale and relocation of the Timberwolves. In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc), we identified the equitable factors that govern preliminary injunctions in this Circuit: (1) the threat of irreparable harm to the party seeking relief, (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties, (3) the probability that the party seeking relief will succeed on the merits, and (4) the public interest. After considering the *Dataphase* factors, the district court concluded that the balance of equities tipped in the NBA's favor. We will not reverse a district court's balancing of the *Dataphase* factors absent a clearly erroneous factual finding, an error of law, or an abuse of discretion. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.1993).

Top Rank does not challenge the district court's finding that the NBA would suffer irreparable harm unless the Timberwolves remained in Minnesota for the 1994–95 season. Instead, Top Rank contends the district court should not have enjoined the sale to Top Rank without also enjoining the MPBLP from negotiating with other buyers who might move the team and inflict the same harm on the NBA. Although we agree with Top Rank that an injunction absolutely prohibiting the MPBLP from selling the team to any buyer might have provided greater protection to the NBA, the sale to Top Rank was the only threat identified in the NBA's motion, and neither the NBA nor Top Rank ever requested a broader injunction. The district court's failure to order more protection than the parties requested is not an abuse of discretion.

In a related vein, Top Rank complains the district court underestimated the injury that the preliminary injunction would cause Top Rank. Top Rank asserts it has been severely injured because the district court did not prevent the MPBLP from selling the Timberwolves to other buyers. Top Rank's brief alleges the Timberwolves franchise "is about to be sold to another potential purchaser," and thus Top Rank's interests are in great jeopardy. Contrary to Top Rank's assertion, any injury Top Rank suffers from the MPBLP's negotiations with other buyers is not the result of the district court's orders, but of Top Rank's own failure to request an injunction preventing the negotiations. Having failed to seek preliminary relief, Top Rank cannot complain the district court should have protected Top Rank's interests on the court's own initiative. Further, Top Rank does not explain why its injury is not compensable. Given the district court's uncontested finding that Top Rank can be made whole with money damages, the court did not abuse its discretion in concluding the second *Dataphase* factor weighed in favor of keeping the Timberwolves in Minnesota. *See St. Jude Medical, Inc. v. Carbomedics, Inc.*, 764 F.2d 500, 502 (8th Cir.1985) (per curiam).

Top Rank also argues the district court misjudged Top Rank's chances of prevailing on the merits of its dispute with the MPBLP.

Top Rank theorizes that despite the NBA Board of Governors' initial rejection of the agreement, the MPBLP prematurely terminated the agreement and, in this way, denied Top Rank any opportunity to cure the NBA's rejection before the agreement's closing date. Thus, Top Rank contends it is likely to prevail on its claim to enforce the agreement against the MPBLP. Top Rank's argument is misplaced. The relevant consideration under the third *Dataphase* factor is whether the NBA, the party seeking the preliminary relief, is likely to prevail on its claim that NBA approval is required before the Timberwolves can be sold to Top Rank. *See Dataphase*, 640 F.2d at 114. Top Rank does not challenge the district court's assessment that the NBA was likely to succeed on its claim because "the closure of the [agreement is] in some fashion contingent on the NBA's approval." Thus, the third *Dataphase* factor weighs in favor of granting preliminary relief.

Finally, we need not consider the fourth *Dataphase* factor because Top Rank does not challenge the district court's finding that the public interest weighed in favor of granting the preliminary relief sought by the NBA. Having completed our review, we conclude the district court did not abuse its discretion when it decided to grant preliminary relief preventing the parties' dispute about ownership and relocation of the Timberwolves from standing the NBA and its 1994–95 basketball schedule on its head.

■ We turn next to Top Rank's contention that the district court violated the Anti–Injunction Act, 28 U.S.C. § 2283 (1988), by relieving the NBA from the state court's preliminary injunction that barred the NBA from preparing the league's 1994–95 schedule, by enjoining the state court's proceedings and orders, and by prohibiting the federal parties from participating in the state court action. We agree with Top Rank that the Anti–Injunction Act prohibits federal courts from enjoining proceedings and parties in the state courts, unless one of the Act's three enumerated exceptions applies. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970);

*Daewoo Elecs. Corp. v. Western Auto Supply Co.*, 975 F.2d 474, 477 (8th Cir.1992). Thus, we must decide whether the challenged portions of the district court's orders fall within the Act's exceptions.

■ The exceptions written into the Anti–Injunction Act allow federal courts to grant an injunction staying state court proceedings when (1) specifically authorized by Congress, (2) necessary to aid the federal court's jurisdiction, or (3) necessary to protect or effectuate the federal court's "judgments." *See* 28 U.S.C. § 2283 (1988). Although the district court believed its orders fell within both the second and third exceptions, we limit our discussion to the third exception, commonly known as the relitigation exception, because it is the only exception arguably applicable to the district court's orders. We review the applicability of the relitigation exception de novo. *Huguley v. General Motors Corp.*, 999 F.2d 142, 145 (6th Cir.1993).

■ Top Rank contends the relitigation exception does not apply to the district court's orders granting preliminary injunctive relief because the orders are not "judgments" within the exception's meaning. Contrary to Top Rank's point of view, we agree with the Fifth and Seventh Circuits that a preliminary injunction is a "judgment" for purposes of the relitigation exception. *Henry v. First Nat'l Bank*, 595 F.2d 291, 306 (5th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *see Doe v. Ceci*, 517 F.2d 1203, 1206–07 (7th Cir.1975). "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 1689–90, 100 L.Ed.2d 127 (1988). The legislative policy that "permits a federal court to enjoin state court action when a federal court has decided a suit on its substantive merits has equal force when a critical underlying issue unrelated to the substantive merits of the action has been litigated to finality." *Baker v. Gotz*, 415 F.Supp. 1243, 1250 (D.Del.), *aff'd*, 546 F.2d 415 (3d Cir.1976) (unpublished opinion); *see Chick Kam Choo*, 486 U.S. at 146, 108 S.Ct. at 1689. A preliminary injunc-

tion confers important rights and finally adjudicates the issue of preserving the status quo until the district court reaches the case's merits. In addition, when a district court grants or denies a preliminary injunction, that decision is immediately appealable to prevent irreparable harm. In sum, a preliminary injunction carries enough significance and finality to invoke the relitigation exception.

█ We are mindful that the exceptions spelled out in § 2283 "are narrow and are 'not [to] be enlarged by loose statutory construction.'" *Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689 (quoting *Atlantic Coast Line R.R.,* 398 U.S. at 287, 90 S.Ct. at 1743). In keeping with this admonishment, we find guidance in Federal Rule of Civil Procedure 54(a), which defines "judgment" for use in the Federal Rules as "a decree and any order from which an appeal lies." This definition encompasses interlocutory rulings that are appealable as of right, like preliminary injunctions, in addition to final judgments on the merits. 17 Charles A. Wright et al., *Federal Practice and Procedure* § 4426, at 550 (2d ed. 1988). In our view, "[Rule 54(a)'s definition of judgment] give[s] a workable and coherent interpretation to § 2283." *Id.; Baker,* 415 F.Supp. at 1249. We thus conclude a preliminary injunction is a protectable judgment under the relitigation exception in § 2253.

█ Although the relitigation exception applies to preliminary injunctions, the exception only permits a district court to enjoin a state court from litigating claims and issues that the district court has already decided. *Chick Kam Choo,* 486 U.S. at 148, 108 S.Ct. at 1690–91; *Daewoo Elecs.,* 975 F.2d at 477. Thus, the district court in this case could only enjoin the state court from taking a different approach on issues decided in granting the NBA's motion for preliminary relief. In granting the NBA's request for preliminary relief, the district court decided the NBA would suffer irreparable harm unless permitted to play its 1994–95 schedule based on the Timberwolves' presence in Minnesota. To protect the NBA's equitable interest in the status quo and thus prevent the parties' dispute over one team from turn-

ing the 1994–95 season upside down, the district court enjoined the MPBLP from selling the team to Top Rank or moving the team to New Orleans, Top Rank's city of choice. By entering a preliminary injunction that barred the NBA "in any way from taking steps and/or actions ... in furtherance of arranging the 1994–95 basketball playing schedule," the state court encroached on an issue the district court had already decided and effectively nullified the effect of the federal judgment. In these circumstances, the district court was not required to stand by and let the state court impair a federal judgment preserving the status quo in the dispute over the Timberwolves. *See Thomason v. Cooper,* 254 F.2d 808, 811 (8th Cir.1958). The district court neither exceeded the scope of the relitigation exception nor abused its discretion when it entered an order enjoining enforcement of the state court's preliminary injunction. *See Chick Kam Choo,* 486 U.S. at 150–51, 108 S.Ct. at 1691–92; *Doe,* 517 F.2d at 1205–07; *Daewoo Elecs.,* 975 F.2d at 478.

█ In contrast, we find no basis in the record for those parts of the district court's orders enjoining the state court from conducting proceedings and entering future orders in Top Rank's lawsuit and prohibiting the federal parties from participating in those proceedings. The mere fact that Top Rank is pursuing a parallel state court lawsuit involving claims and parties common to the federal action does not justify the district court's intervention in state court proceedings. *See Atlantic Coast Line R.R.,* 398 U.S. at 295, 90 S.Ct. at 1747. Although the district court expressed concern that the state court might ·pronounce judgment first and the district court would have little, if anything, left to decide, this pessimistic forecast is a natural consequence of the nation's dual system of independent state and federal courts, and not a legal justification for staying state court proceedings. We agree with Top Rank that the district court violated § 2283 when it foreclosed the state court and the federal parties from proceeding in Top Rank's lawsuit. To this extent, the orders entered by the district court must be narrowed. *See Chick Kam Choo,* 486 U.S. at 151, 108 S.Ct. at 1692.

Accordingly, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.