Paul C. TEAS et al., Plaintiffs-Appellees,
Arthur J. LEWIS et al., Involuntary
Plaintiffs-Appellees,

v.

TWENTIETH CENTURY–FOX FILM
CORPORATION, Defendant-
Appellant.

No. 26599.

United States Court of Appeals
Fifth Circuit.

June 24, 1969.

**1264**

Mark Martin, J. Mike Joplin, Neth Leachman, Dallas, Tex., Otto E. Koegel, William F. Koegel, New York City, Howard I. Friedman, Robert M. Ruben, Los Angeles, Cal., Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., Royall, Koegel, Rogers & Wells, New York City, Loeb & Loeb, Los Angeles, Cal., for appellant.

Ira Butler, J. A. Gooch, Cecil E. Munn, Carlisle Cravens, Jack C. Wessler, Charles L. Stephens, Fort Worth, Tex., Robert I. Waxman, Atty., U. S. Dept. of Justice, Washington, D. C., Cantey, Hanger, Gooch, Cravens & Scarborough, Fort Worth, Tex., for appellees.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

This litigation is in the same case as and is supplemental to that reported as Teas v. Twentieth Century Fox Film Corp., N.D.Tex., 1959, 178 F.Supp. 742, *on appeal* 5 Cir.1961, 286 F.2d 373, *cert.* *den.* 368 U.S. 818, 82 S.Ct. 33, 7 L.Ed.2d 24. It concerns the continuing effect of the judgment rendered by the district court on remand in accordance with the opinion and decision of this Court. The district court held that its judgment foreclosed the relief sought in two suits filed in California—one by the defendant Twentieth Century and its wholly owned real estate holding subsidiary, Fox Realty Company, and the other by Fox Realty alone. It denied Twentieth Century's motion to dismiss or to hold this proceeding in abeyance pending action in the California court and granted the motion of the plaintiffs for summary judgment. We affirm.

The facts upon which our decision was based have been sufficiently stated in the former opinions. We determined Twentieth Century's personal obligations to the plaintiffs under contracts executed in April 1943, imposing *joint and several* personal obligations on Twentieth Century and Fox Realty, and under an oil and gas lease on the property involved executed by Fox Realty in March 1952. The gist of our holding was thus expressed:

"We conclude, therefore, on the merits, that this contract is to be construed as entitling the plaintiffs, in addition to the 8⅓% payments to be received directly from the lessee, to receive a sum equal to one-half of the amounts received *and to be received by Fox* and denominated in the lease contract 'variable participating royalties.'" [Emphasis added.]

286 F.2d at 379.

Twentieth Century has never denied that the plaintiffs are entitled to receive 8⅓% of the proceeds of all oil and gas produced from wells bottomed under the land. The point decided against Twentieth Century was that the net profits interest, called "variable participating royalties,".was in truth a "bonus" under the 1943 contracts which provided that the plaintiffs were to receive one half of

any "bonus" paid for entering into an oil and gas lease.

Fox Realty was not made a party to this action apparently because the parties thought that might destroy diversity jurisdiction. We held that Fox Realty was not an indispensable party because this action is not one dealing with an interest in realty, but is based upon Twentieth Century's separate personal obligation under its *joint and several* promise with Fox Realty.

On remand the district court entered a judgment which provided in pertinent part as follows:

"That plaintiffs and involuntary plaintiffs do have and recover from defendant judgment which hereby determines, fixes and declares the rights of such plaintiffs and involuntary plaintiffs arising *under the contracts sued on* to be *hereafter* paid by the defendant, and the duty, obligation and requirement of such defendant *under such contracts* to *hereafter* pay to such plaintiffs and involuntary plaintiffs, and each of them, according to their respective interests and percentages as hereinafter shown, sums and amounts equivalent to fifty percent (50%) *of any and all sums and amounts whatever* which may be *hereafter received* either by or for the credit or benefit of such defendant *or its subsidiary, Fox Realty Corporation of California,* as lessor, in that certain oil and gas lease dated March 21, 1952, made and entered into with Universal Consolidated Oil Company, as lessee (or which may be *hereafter* paid, credited or received by or between any successor or assign *of such companies*), on account of or under those provisions of such lease which provide for the payment by such lessee to *lessor* of a 50% net profits interest and which is referred to therein as being a 'variable participating royalty'." [Emphasis added.]

Neither this Court nor the district court discussed further provisions of the 1943 contracts by which the *personal obligations* of Twentieth Century and Fox Realty to the plaintiffs could be terminated by conveying to the plaintiffs 8⅓% of all minerals under the land and by imposing a burden upon the remainder of the mineral and oil interests in the property and the property itself to pay one half of any bonus payments to the plaintiffs. There was no occasion to discuss those provisions, both because the plaintiffs were to receive the same payments whether from joint and several personal obligations of Twentieth Century and Fox Realty or from the land itself and because at that time there had been no effort to terminate the personal obligations and substitute the interests in real property.

In compliance with the judgment of the district court, Twentieth Century paid to the plaintiffs' trustee in excess of $1,200,000.00 from the date of the judgment, November 29, 1961, until June 15, 1967, when its payments ceased, and shortly thereafter its Assistant Treasurer notified plaintiffs' trustee:

"This is to advise you that Fox Realty Corporation of California, as lessor in that certain oil and gas lease dated March 21, 1952, will make no further payments to you in connection with the interest denominated in the lease as the variable participating royalty."

As of June 15, 1967, the date on which Twentieth Century ceased payments under the judgment, instruments of conveyance, purportedly pursuant to the 1943 contracts, were executed and delivered by Fox Realty to plaintiffs' trustee. Immediately after the execution of the conveyances, both Twentieth Century and Fox Realty filed proceedings in a California State court seeking to secure a declaration that the conveyances effected a termination of their personal covenant obligations under the 1943 contracts. At the same time, in a separate action in the California court, Fox Realty sought to quiet its title, free of any claim of plaintiffs to a charge on account of any part of the "variable participating royalty." Thus Twentieth

Century seeks from the California court a declaration that its personal obligation, on which the judgments of this Court and of the federal district court were based, has now terminated, while its wholly owned subsidiary Fox Realty seeks to re-litigate in the same California court the issue of whether the "variable participating royalties" are legally a "bonus" in which the plaintiffs are entitled to a 50% participation.[1]

On August 10, 1967, the present supplementary proceeding was filed. Plaintiffs asked the district court, pursuant to 28 U.S.C. § 2202,[2] to declare that Twentieth Century continues to be obligated by the district court's prior judgment to pay to plaintiffs and their successors in interest sums equal to one half of the "variable participating royalty" theretofore or thereafter received by Fox Realty, the lessor, under its 1952 oil and gas lease and for ancillary relief. Twentieth Century moved to dismiss the present proceeding on ground that the district court did not have jurisdiction of the controversy under 28 U.S.C. § 2202,[3] or in the alternative to abate the proceeding pending the determination of Twentieth Century's declaratory judgment action in California. The plaintiffs filed interrogatories which Twentieth Century answered. Plaintiffs also deposed two of Twentieth Century's officers. Plaintiffs then moved for summary judgment. Twentieth Century submitted no evidence in opposition other than its verified response and a proposed

opinion. Plaintiffs also submitted a proposed opinion. The district court entered a brief opinion of its own composition and a judgment denying Twentieth Century's motion to dismiss, granting plaintiffs' motion for summary judgment and also granting ancillary relief which included an injunction against Twentieth Century,

> "both in its own name and by and through Fox Realty Corporation of California, its wholly owned subsidiary, from further proceeding with Action No. 911816 and Action No. 911841 heretofore filed and now pending in the Superior Court of the State of California for the County of Los Angeles, other than the dismissal of that litigation, and from instituting any other similar litigation or taking any other further similar or different action designed or intended to deprive petitioners of sums and amounts hereafter due them under the prior judgment of this Court and under the declaratory judgment contained in Paragraph 4 hereinabove."

Twentieth Century appeals from that judgment.

■ We hold that the district court properly assumed jurisdiction of the controversy and properly granted plaintiffs' motion for summary judgment. Our holding is based upon the admitted power of the district court to construe and effectuate its judgment and to prevent any interference with it. That is

---

1. The record clearly shows the intendment of Twentieth Century and its subsidiary. The complaint for declaratory relief prays for a judicial decree that neither Fox Realty nor Twentieth Century is under a "personal obligation[s] to pay to [plaintiffs] an amount equivalent to" the 8⅓% royalty plus the bonus of 50% of the variable participating royalty. Moreover, the quiet title complaint seeks to litigate the claim that "said 'variable participating royalty' constitutes a 'bonus payment' or 'payment of land rental' under the provisions [of the contracts]." This claim was the precise issue previously litigated in the Fifth Circuit proceedings. *See* Twentieth Century-Fox Film, *supra*, 286 F.2d at 379.

2. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

3. Twentieth Century claimed that, except as a supplementary proceeding, the district court did not have diversity jurisdiction because of the claimed operation of the amendment of July 25, 1958 to 28 U.S.C. § 1332(b) to make Twentieth Century a citizen of the same state as some of the plaintiffs.

both an inherent power of courts of the United States and one expressly conferred by statute.[4] The All Writs Act, 28 U.S.C. § 1651(a), empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* Toledo Scale Co. v. Computing Scale Co., 1923, 261 U.S. 399, 426, 43 S.Ct. 458, 67 L.Ed. 719. *Cf.* Stell v. Savannah-Chatham County Bd. of Education, 5 Cir. 1963, 318 F.2d 425, 428. 28 U.S.C. § 2202, particularly relied upon here, authorizes necessary or proper relief against any party whose rights have been determined by a declaratory judgment. *See, e.g.,* Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir. 1958, 253 F.2d 29, 30. *See also* 6A J. Moore, Federal Practice ¶ 57.-10 (2d ed. 1966). 28 U.S.C. § 2283 recognizes the power of a court of the United States to enjoin or stay proceedings in a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ We hold that the district court properly granted injunctive relief against Twentieth Century to effectuate its prior judgment upon the "variable participating royalty" term of the 1943 contracts. We simply construe the district court's judgment entered on November 29, 1961 in accordance with what we consider to be its plain meaning: that, unless sooner terminated by or with approval of the court of rendition, its provisions extend *in futuro* throughout the life of the 1952 oil and gas lease. Phrased differently, the interpretation of the contract term "variable participating royalty" is an *in personam* determination binding *in futuro* on Twentieth Century until modified by or with approval of the district court or terminated by the expiration of the lease. Twentieth Century cannot, by direct or indirect means, vary or terminate that judgment.

■ In simple terms Twentieth Century is collaterally estopped from re-litigating the meaning of the term "variable participating royalty." *See* Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122. *See generally,* 1B Moore, Federal Practice ¶ 0.443 (2d ed. 1966). The principle of finality applies with equal vigor to indirect and direct attempts collaterally to frustrate a judgment. Twentieth Century's answers to plaintiffs' interrogatories make apparent Twentieth Century's purpose in bringing the suit for declaratory relief in California:

"INTERROGATORY NO. 40: List all reasons for the decision to convey mineral interests to Crocker-Citizens National Bank of Los Angeles, as Trustee, under the June 15, 1967, conveyances described in Interrogatory No. 29.

"ANSWER TO INTERROGATORY NO. 40: To terminate any continuing personal liability of Fox Realty Corporation of California and defendant in connection with the payment of moneys to plaintiffs or to Fox Hills Realty Company and Janss Investment Corporation and their respective successors.

\* \* \* \* \* \*

"INTERROGATORY NO. 43: Was the variable participating royalty described in Interrogatory No. 42 a form of net profits interest?

"ANSWER TO INTERROGATORY NO. 43: The variable participating royalty was calculated on the basis of net profits, and to that extent, constitutes an interest measured by net profits. Its proper denomination was 'variable participating royalty'.

"INTERROGATORY NO. 44: Was the variable participating royalty described in Interrogatory No. 42 a 'bonus' under the terms and provisions of the April 15, 1943, contracts which are identified as Exhibits 'A' and 'B' to the said Petition for Further Relief?

---

4. *See* Terry v. Adams, 1953, 345 U.S. 461, 470, 73 S.Ct. 809, 97 L.Ed. 1152; Mississippi Valley Barge Line Co. v. United States, E.D.Mo.1967, 273 F.Supp. 1, 6, *aff'd* 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed. 2d 779; United States v. Wallace, N.D. Ala.1963, 218 F.Supp. 290, 292, and the many decisions there collected.

"ANSWER TO INTERROGATORY NO. 44: No.

"INTERROGATORY NO. 45: Did Twentieth Century-Fox Film Corporation under the said Agreements of April 15, 1943, as interpreted by final judgment of this Court, become obligated to pay to plaintiffs and/or involuntary plaintiffs amounts equivalent to fifty percent (50%) of the proceeds from the 'variable participating royalty' described in Interrogatory No. 42?

"ANSWERS TO INTERROGATORY NO. 45:

Yes, so long as defendant continued to be personally obligated to pay amounts equivalent to 8⅓% of the proceeds of all oil, gas, other hydrocarbons and other associated substances produced and saved from wells, etc. and 50% of any bonus payment or payments of land rentals, etc. pursuant to said agreements.

\* \* \* \* \* \*

"INTERROGATORY NO. 92: If Twentieth Century-Fox Film Corporation and its wholly owned subsidiary Fox Realty Corporation of California should prevail in obtaining all relief sought in the two actions described in Interrogatories Nos. 69 and 74, would one of the effects thereof be to preclude sharing, direct or indirect, thereafter by the plaintiffs in this action in the variable participating royalty described in Interrogatory No. 42 or in amounts measured thereby?

"ANSWER TO INTERROGATORY NO. 92: Yes."

The transparent purpose of the California litigation is to terminate the current contractual duties (as defined in part by the 1961 judgment) so that Twentieth Century can be in a position to re-litigate the bonus issue to its satisfaction. We cannot permit the prior judgment to be rendered null and void through the ingenious expedient of a declaratory judgment concerning a different term of the same contract. *Cf.* Standard Oil Co. v. Standard Oil Co. (New Jersey), E.D. Mo.1965, 239 F.Supp. 97. By its California litigation Twentieth Century attempts not only to shift its obligation to the realty, but also attempts to free both itself and the land from the judgment that the "variable participating royalty" is a "bonus." *Infra.* This, in order to protect and effectuate the 1961 judgment on the bonus issue, we find it necessary to affirm the district court's injunctive decree against the California litigation.[5]

■ The remaining issue is the scope of the injunctive decree. We construe the language of the injunction, *supra* pp. 6–7, so that it operates directly only upon Twentieth Century. Such construction, while paying appropriate deference to considerations of due process of law, *see* Zenith Radio Corp. v. Hazeltine Research, Inc., 1969, 393 U.S. 995, 89 S.Ct. 480, 21 L.Ed.2d 460 [May 19, 1969], does not render the injunctive relief ineffective against Fox Realty Company, a non-party. Rather, the injunction against Twentieth Century inures to the detriment of all persons within the scope of Twentieth Century's corporate control.[6] The record clearly shows that Twentieth Century controls Fox Realty's corporate activities to the extent consistent with our affirmance of

5. We do not necessarily foreclose Twentieth Century from terminating its personal obligations pursuant to the intendment of the contracting parties. The essence of our holding is, however, that such foreclosure must be sanctioned by the court imposing the obligations and cannot be accomplished by the unilateral action of other courts. *See, e. g.,* Rule 60(b) Fed. R.Civ.P., 28 U.S.C.A.

6. Any intimation in the district court's opinion that the injunction operates directly upon Fox Realty can be disregarded since we review only the judgment of that court. 28 U.S.C. § 1291. Because we understand the injunction to operate solely upon Twentieth Century *in personam,* we need not discuss the doctrines of privity or alter ego. Such doctrines appear inapplicable in the absence of jurisdiction over Fox Realty. *See Zenith Radio, supra.*

the injunction as written.[7] We therefore understand the injunction to restrain Twentieth Century's entire panoply of corporate powers over the mineral interests in question. Included in this array of powers is the control of the litigation conducted in part by Fox Realty. We therefore approve of the injunction as written.

Affirmed.

7. At the very least, the record establishes substantial identity between Twentieth Century and Fox Realty. Twentieth Century appears to be a parent company many of whose corporate activities are carried out by its more than 160 wholly owned subsidiaries. The deposition of John B. Codd, a former officer of Twentieth Century and Fox Realty, indicates the extent to which the companies are related:

"Q. Is it true that the function of Fox Realty Corporation of California was and is to hold real estate for Twentieth Century-Fox Film Corporation?

"A. Yes.

"Q. Does Fox Realty Corporation of California have any function other than that?

"A. Well, the oil operation belongs to Fox Realty Corporation of California. It has leases on other buildings; it's real estate, of course, that is true.

\* \* \* \* \*

"Q. You tell me. Who is Fox Realty Corporation of California?

"A. Well, it's a corporation.

"Q. Who are its employees?

"A. Well, I do not know that it has any employees in the normal sense of the word.

"Q. Who looks after the operations under the Universal lease for Fox Realty Corporation of California?

"A. I was doing it.

"Q. You were doing it. And you were an employee of Twentieth or of Fox?

"A. Correct, of Twentieth.

"Q. Did you receive any payment of any kind from Fox Realty Corporation of California as an officer?

"A. No.

\* \* \* \* \*

"Q. Did Fox Realty Corporation pay its directors?

"A. I do not know.

"Q. Did it pay its officers?

"A. I do not know that.

"Q. You were an officer?

"A. Yes. They did not pay me.

\* \* \* \* \*

"Q. To what degree is Fox Realty Corporation of California in practice controlled by Twentieth Century-Film Corporation?

"A. I do not know. Its activities are carried on largely in New York, the home office.

"Q. The activities of Fox Realty Corporation of California are carried on largely in New York; is that correct?

"A. The control that you speak of. If there is control.

\* \* \* \* \*

"Q. When you were vice president of Fox Realty Corporation of California, did it have any employees?

"A. None.

\* \* \* \* \*

"Q. As vice president, you did not know whether it paid anybody?

"A. No.

"Q. And as vice president, you did not know whether the directors were paid, did you?

"A. I did not.

"Q. Were all of the directors of Fox Realty Corporation of California either officers, directors or employees of Twentieth?

"A. I believe so.

"Q. Were all of the officers of Fox Realty Corporation of California either directors, officers or employees of Twentieth?

"A. I believe so, but the record would show that."

Mr. Codd also indicated in his deposition that Fox Realty's contracts were negotiated by the "top executives" and "executive committee" of Twentieth Century. Moreover, when Fox Realty pursued the California litigation, Twentieth Century's New York attorneys oversaw the action. Without so holding, we note that the control relationship between parent and subsidiary might be proved sufficient for a determination of privity or even alter ego. However, we need only hold that Twentieth Century so controls Fox Realty that the district court can restrain the latter by restraining all of the corporate powers of the former.