Gilbert **GERTNER**, Plaintiff-Appellant,

v.

**HOSPITAL AFFILIATES INTERNATIONAL, INC.**, Defendant-Appellee.

No. 77–2293.

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1979.

Rehearing Denied Oct. 10, 1979.

J. Eugene Clements, Richard L. Symonds, Houston, Tex., for plaintiff-appellant.

Max Hendrick III, Houston, Tex., for defendant-appellee.

Before WISDOM, CLARK and GEE,* Circuit Judges.

CHARLES CLARK, Circuit Judge:

Plaintiff Gilbert Gertner instituted this diversity action against Hospital Affiliates International, Inc. (HAI) for violating an oral joint venture agreement which allegedly provided for their joint acquisition of Shoal Creek Hospital. Upon depositions submitted by both parties, the district court granted summary judgment for the defendant. We reverse and remand.

According to the depositions of Gertner and his comptroller, John C. Ledet, considered most favorably to Gertner's position, the following facts were adduced. Gertner's business dealings with HAI, a company engaged in the ownership and management of hospital properties, began in the mid-1960's. Gertner, a wealthy Texas real estate investor, had at that time been approached by a representative of HAI to sell his interest in a local hospital for part ownership of HAI. Although that deal was never consummated, a close working relationship developed during the course of which both parties have exchanged information of potential business or investment opportunities in various hospitals. None of their mutual transactions have ever resulted in joint ownership of hospital property; however, one of HAI's subsidiaries has provided ongoing management contracts for at least one of Gertner's hospitals. Over a period of several years preceding the Shoal Creek Hospital venture, HAI offered Gertner an ownership interest in two of its hospitals, requested his help in finding a buyer for a hospital, brought to his attention a hospital for sale for which he was to give HAI a management contract, sold him a nursing home, and negotiated with him for the joint purchase of another hospital facility. Similarly, Gertner advised HAI of many hospitals, in some of which Gertner had an ownership interest, available for their acquisition or for securing management contracts. Often Gertner received a finder's fee for his information.

HAI and Gertner handled their business in an informal manner. Agreements were never written, and continuing negotiations were discussed loosely, with the structure of a given transaction often changing over time.

Gertner dealt mostly with Edward Stolman, executive vice president of HAI, and Charles Brightwell, a vice president of HAI and Gertner's long-time personal friend.

---

* Judge Gee recused himself in this case. By agreement of counsel, the case was heard and decided by a quorum of the court. 28 U.S.C. § 46(d).

Their relationship began in 1959 when Gertner hired Brightwell as administrator of one of his hospitals. Brightwell retained that position for 14 years until he joined with several partners, bought the facility, and eventually sold it to HAI, becoming an employee of that company. Brightwell and Gertner have continued to work together outside of their HAI dealings: they have been involved in land transactions, they were partners in the construction of a hospital, they entered into a joint venture, and they have maintained a personal friendship.

In March of 1976, Brightwell told Gertner that there was a possibility Shoal Creek Hospital would be for sale. According to Gertner, at that time HAI was not interested in investing in Shoal Creek itself, but wanted a management contract there should Gertner make the purchase. Brightwell and other HAI officers were present at Gertner's initial contract with the Shoal Creek owners, and accompanied him on his first visit to the facility. Ledet, Gertner's comptroller and detail man, handled the preliminaries and freely discussed his negotiations with Brightwell and others at HAI who at various times provided considerable information on Shoal Creek, including the preparation of a cash flow projection.

The original Shoal Creek purchase as envisioned by Gertner involved little or no cash investment with little exposure to personal liability. Although Gertner's efforts to acquire the hospital under these terms resulted in a tentative contract of sale, eventually negotiations broke down and the transaction was not consummated. Instead, the owners of Shoal Creek began negotiations with a group in Washington, D. C., which involved a greater cash commitment.

Realizing the need to modify his proposal, Gertner decided to contact Stolman, on Brightwell's suggestion, for assistance. Beginning on August 20, 1976, therefore, Ledet and Stolman discussed a possible arrangement whereby HAI would provide the purchase money in exchange for a management contract. Gertner would fund or finance the necessary working capital and

own the hospital. Continued discussions between Ledet and Stolman led to Ledet calling the Shoal Creek owners to arrange a meeting with Stolman. Whether Stolman was introduced as Gertner's agent is unclear; however, on August 30, Stolman made a written offer for Shoal Creek on behalf of HAI alone. His letter concluded: "HAI will hold harmless [the Shoal Creek owners] from any claims which may be asserted by Mr. Gilbert Gertner respecting his role as a possible finder in the transaction."

Meanwhile, Gertner continued discussions with both HAI and representatives of Shoal Creek on the assumption that Stolman was working on his behalf to arrange for a purchase. On September 1, Stolman and Gertner had a telephone conversation which, according to Gertner, established a definite understanding of a joint offer to be made. Specifically, Gertner said Stolman offered to supply 50 percent of the purchase money in exchange for 50 percent ownership. Although many specifics were not discussed at that time, Gertner agreed.

The next day Shoal Creek accepted HAI's independent offer, and those two entered into an option agreement subject to HAI's examination of the property. The agreement expressly indemnified the seller against any claims of Gertner as a result of the acquisition of Shoal Creek Hospital by HAI. At the same time, Stolman had the seller sign two contradictory letters concerning Gertner's participation. One stated that the seller's relationship with Gertner was terminated at that date; the other authorized HAI to associate Gertner as buyer.

Gertner knew of the contract but assumed that he was included in the deal in accordance with his September 1 agreement with Stolman. When HAI sent Stolman and others to see Shoal Creek on September 2, Gertner gratuitously provided the use of his hotel. It was not until mid-September that Gertner was told that HAI was independently purchasing the hospital. Stolman offered to discuss the possibility of including Gertner at an executive commit-

tee meeting, but the closing occurred on October 7 without him. The Shoal Creek assets were placed in Hospital Affiliates of Austin, Inc., a wholly owned subsidiary of HAI formed specifically for that purpose.

The defendant disagrees with Gertner's characterization of their relationship prior to the Shoal Creek incident and with his descriptions of the course of the Shoal Creek negotiations. It contends that no agreement was ever reached to purchase the hospital with plaintiff.

Gertner advances several theories of liability: (1) breach of an oral joint venture contract; (2) breach of a fiduciary duty based on the alleged oral joint venture contract; (3) fraudulent misrepresentation; (4) illegal conversion of plaintiff's alleged joint venture interest. By way of relief Gertner alternatively prays that a constructive trust be placed upon the stock of Hospital Affiliates of Austin, Inc., or upon the assets of Shoal Creek Hospital, or that he recover pecuniary damages for anticipated profits. After denying Gertner's motion for preliminary injunction, the district court granted summary judgment for HAI.

Prior to the preliminary injunction hearing, HAI asserted that its Austin subsidiary, which holds the assets of Shoal Creek, was a necessary or indispensable party to the action under Fed.R.Civ.P. 19(b). Gertner opposed HAI's motion to dismiss for nonjoinder. Because joinder of the Austin corporation would destroy the diversity upon which federal court jurisdiction is based, and because of its finding that "the interest of HAI and its subsidiary are identical," the district court concluded that no prejudice would result from nonjoinder and proceeded with the parties before it. Following the denial of the injunction, Gertner changed his position and now agrees with HAI's assertion that the suit must be dismissed. To insure himself an adequate remedy elsewhere, Gertner instituted suit in state court, joining the Austin subsidiary as a defendant.

We find that the subsidiary is not an indispensable party to the present action. Rule 19(b) deals with the determination a court should make whenever joinder of an interested person is not feasible. By its terms, the rule requires the court to consider the following factors in determining whether an action should proceed with only the parties before it:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the persons' absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Only one of the remedies sought, imposition of a constructive trust on the assets of Shoal Creek Hospital, would involve property belonging to the absent subsidiary. The other alternative remedies affect only the rights and property of the defendant HAI. Even the remedy seeking a trust on the subsidiary's assets would not mandate dismissal. HAI owns all of the subsidiary's stock. The subsidiary's assets consist solely of the Shoal Creek acquisition. Assuming this remedy were the one a court chose to grant, it could accomplish the same result by imposing a constructive trust on stock of the subsidiary, and thus adequately protect Gertner's rights without joining the subsidiary.

The four theories of liability advanced by Gertner all seek redress from the same wrong: HAI's breach of an alleged oral joint venture agreement. Gertner seeks to hold HAI to its agreement, arguing that the statute of frauds does not apply to a contract between two or more parties for the joint acquisition of property from a third person. Alternatively, he requests the imposition of a constructive trust, an equitable remedy designed to prevent unjust enrichment by one who takes advantage of a fiduciary relationship in the absence of an enforceable agreement. He claims HAI defrauded him because it had no intention of

including him in its purchase agreement despite its representations to the contrary; and he charges HAI with illegal conversion of his business opportunity.

On all points, HAI challenges Gertner's interpretation of Texas law, argues that Gertner has in no way pleaded facts of a prior relationship of trust and confidence sufficient to impose on it a fiduciary duty which would justify a constructive trust, and denies that the facts establish the formation of an agreement between Gertner and HAI.

 The district court erred in holding that no genuine fact issues were presented which were material to the resolution of these issues. Fed.R.Civ.P. 56(c). Gertner testified to a background of dealings between himself and personnel of HAI extending over many years and involving many transactions and exchanges of confidential information and documents. He asserts that the Shoal Creek negotiations were an extension of this fiduciary relationship. The timing of the various events which occurred, contacts with Shoal Creek's principals by Gertner and HAI officials, and several parts of the documentation developed, lend more than colorable support to Gertner's contention that an ongoing fiduciary relationship existed and was breached, thus justifying equitable relief. These same facts also create a genuine issue as to whether an oral agreement existed which is amenable to a remedy at law despite the requirements of the statute of frauds.

The district court regarded the oral agreement as unenforceable under the statute of frauds, Tex.Bus. & Comm.Code, Section 26.01, and Texas Trust Act, Tex.Rev. Civ.Stat.Ann., art. 7425b–7. Although the statutes bar oral contracts for the sale of land, it is not clear that they apply to oral joint-venture agreements between two persons for the purchase of land from a third person. *Bradley v. Bradley,* 540 S.W.2d 504 (Tex.Civ.App.1976); *Reed v. Howard,* 71 Tex. 204, 9 S.W. 109 (1888). These cases acknowledged that an oral joint-venture agreement or fiduciary relationship which antedated the transaction or was clearly

established to exist at the time of the parties' dealings could be enforced. Other cases tend to make the Texas law in this area unsure. *Rankin v. Naftalis,* 557 S.W.2d 940 (Tex.1977); *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333 (Tex.1966).

Because Texas law depends on what the facts show when they are fully developed, it is not appropriate to undertake a complete analysis of these decisions or to attempt to predict on this appeal from a summary judgment order which line of cases Texas would hold should control the outcome of this action. We say now only that under the facts developed to this point, HAI failed to meet its burden of establishing that no genuine issues of material fact existed and that it was entitled to summary judgment as a matter of law. Therefore, the judgment appealed from is

REVERSED and REMANDED.