TEXAS UTILITIES COMPANY and
Chaco Energy Company, Plaintiffs,

v.

SANTA FE INDUSTRIES, INC., et
al., Defendants.

Civ. A. No. 3–81–2224–H.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 16, 1982.

M.D. Sampels, Worsham Forsythe &
Sampels, Dallas, Tex., for plaintiffs.

Joe Bruce Cunningham, Fort Worth,
Tex., John W. Hicks, Jr., Turner, Hitchins,
McInerney, Webb, Hartness & Strother,
Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on the following:

Plaintiffs', Texas Utilities Company
(TUC) and Chaco Energy Company (Chaco), Application for Temporary Restraining Order, Preliminary Injunction and
Hearing, filed December 22, 1981;

Defendants', Santa Fe Industries, Inc.
(SFI), Atchison, Topeka & Santa Fe Railway Co. (AT & SF), and Santa Fe Mining, Inc. (SFM), Motion to Stay or in the

Alternative to Dismiss, filed January 13, 1982, and Alternative Motion to Transfer, filed May 5, 1982; and

Defendants', Thercol Energy Company (Thercol) and Peabody Coal Company (Peabody), Motion to Dismiss, Alternative Motion to Transfer, and Motion to Stay Discovery, all filed February 1, 1982.

The Court has reviewed the record, the parties' briefs and applicable case law and is of the opinion this case should be transferred to the District of New Mexico.

### Introduction

On December 18, 1981, TUC and Chaco filed suit in the United States District Court for the Northern District of Texas naming as Defendants SFI, AT & SF, SFM, Thercol and Peabody. The complaint sets forth nine separate causes of action:

*First Cause of Action:* Defendants and co-conspirators have violated Section 1 of the Sherman Act by conspiring to fix the price of coal in the San Juan Basin in New Mexico, to restrict the production and sale of coal from the Basin, and to refuse to negotiate with Plaintiffs on terms other than those agreed upon by the conspirators.

*Second and Third Causes of Action:* Defendants and co-conspirators have monopolized, attempted to monopolize, and combined and conspired to monopolize the trade and commerce in the production and transportation of coal in the San Juan Basin in violation of Section 2 of the Sherman Act.

*Fourth, Fifth and Sixth Causes of Action:* Defendants and co-conspirators have violated Sections 57–1–1 and 57–1–2 of the New Mexico Antitrust Act.

*Seventh and Eighth Causes of Action:* Defendants fraudulently induced Plaintiffs to enter into the Coal Lease contract between Plaintiff Chaco and co-conspirator Hospah and the related Surety Agreement between TUC and Hospah.

*Ninth Cause of Action:* Plaintiffs seek a declaration that no contract was created by the Chaco-Thercol Joint Development Agreement.

To remedy these alleged illegal acts Plaintiffs have asked this Court to declare the Coal Lease contract between Chaco and co-conspirator Hospah, the Surety Agreement between TUC and co-conspirator Hospah, and the Joint Development and Operating Agreements, and Agreements of Purchase and Sale between Chaco and Thercol to be unlawful, null, void and unenforceable. Plaintiffs also seek to recover from the Defendants all damages, losses or liabilities incurred at anytime by Plaintiffs as a result of having entered into the Coal Lease contract between Plaintiff Chaco and co-conspirator Hospah, the Surety Agreement between TUC and Hospah, the Joint Development Agreements between Chaco and Thercol, and the Agreements of Sale and Purchase between Chaco and Thercol. Finally, Plaintiffs seek to enjoin each Defendant, as well as their officers, agents and assignees, from enforcing any rights under the allegedly illegal contracts.

This dispute focuses on the control exercised over the coal reserves in the San Juan Basin of New Mexico by the Santa Fe defendants (SFI, AT & SF and SFM), Thercol, Peabody and their alleged co-conspirator Hospah; according to Plaintiffs, the conspirators actual, direct control of vast coal interests is greatly enhanced by the Santa Fe defendants monopolization of railroad services in the Basin. Plaintiffs have sought to obtain from the Defendants access to coal in the San Juan Basin for sale to generating plants in Texas. From 1970 to 1974 TUC negotiated separately with the Santa Fe defendants and Thercol regarding the acquisition of coal. Plaintiffs allege the Defendants ceased negotiating independently in mid-1974 and in May 1974 a joint Memorandum of Intent was entered into by Texas Utilities Services, Inc. (a subsidiary of TUC), Cherokee & Pittsburg Coal and Mining Company (now SFM) and Thercol. The Memorandum of Intent which set forth terms for the development, sublease, lease, sale, resale and transportation of coal in the Basin, was cancelled in October 1976 at a substantial cost to Plaintiffs. Chaco subsequently entered into four contracts with Thercol on January 26, 1977, and one con-

tract with Hospah on April 15, 1977 (TUC entered into a related surety contract with Hospah on the same date). Despite ostensibly independent negotiations between Plaintiffs and the Santa Fe defendants and Hospah (a wholly owned subsidiary of Santa Fe Mining, Inc.), and Plaintiffs and Thercol, the terms of the subsequent resulting contracts were substantially identical to the terms of the 1974 joint Memorandum of Intent. In order to fully realize the benefit of these contracts TUC and Chaco needed to be able to transport their coal out of the Basin, but, according to Plaintiffs, the Santa Fe defendants have refused to provide adequate rail transportation at reasonable rates. The result—Chaco has paid for and continues to pay Hospah for coal it cannot economically mine as a result of the unavailability of rail transportation and the prohibitory royalties imposed by the contracts; Chaco has not made any payments under its contracts with Thercol for similar reasons despite Thercol's demands.

### Procedural Status of Case

The case currently before this Court was filed on December 18, 1981. Three days later, December 21, 1981, SFI, AT & SF, SFM and Hospah Coal Company (a non-party co-conspirator in the Texas action) filed an action in New Mexico naming TUC and Chaco as defendants. The suit in New Mexico requests a declaration that its Plaintiffs have not violated the federal or state laws and an injunction prohibiting TUC and Chaco from proceeding with their Texas action. In response to the filing of the New Mexico action TUC and Chaco applied for a temporary restraining order and a preliminary injunction in this Court in order to prevent the Santa Fe defendants from proceeding in the New Mexico court on the grounds the Texas suit was the prior pending action and should be resolved first. This Court denied Plaintiffs' request for a temporary restraining order December 22, 1981, while the New Mexico District Court on January 11, 1982, granted the Santa Fe defendants' and Hospah's request for a preliminary injunction restraining the Plaintiffs from proceeding in this Court. The

basis for the injunction was the venue selection clause in the Chaco-Hospah agreement placing venue in New Mexico for all suits "arising out of or relating to" the contract. In January SFI, SFM and AT & SF filed a motion with this Court seeking a stay or dismissal of the Texas action on the basis of the New Mexico injunction. At the same time TUC and Chaco sought relief from the New Mexico injunction in both New Mexico District Court and the Tenth Circuit Court of Appeals. During the pendency of their appeal TUC and Chaco filed an answer and a counterclaim in the New Mexico action, CIV–81–1042–JB, on February 1, 1982, which raises the same issues as the suit before this Court. But, more importantly, TUC and Chaco filed a separate independent action in the New Mexico District Court, CIV–82–0098–JB, in January 1982 which mirrors this suit as well. In addition to the federal court cases, Thercol and Peabody have filed suit in state court in New Mexico to enforce an arbitration provision in the Chaco-Thercol contract; the issue of the enforceability of that contract is also before this Court.

The Circuit upon receipt of the appeal stayed all action in the matter pending its decision. The Circuit's decision dismissing the New Mexico preliminary injunction was issued March 29, 1982. *Hospah Coal Co. et al. v. Chaco Energy Co., et al.,* 673 F.2d 1161 (10th Cir.1982). In its decision the Tenth Circuit set forth the general rule governing priority of actions as follows: Where two courts have concurrent jurisdiction, the court in which jurisdiction first attaches has priority to consider the case. *Id., citing O'Hare International Bank v. Lambert,* 459 F.2d 328 (10th Cir.1972). Jurisdiction attaches first in the court where the suit was first filed. *See Hospah Coal Co., supra, citing Barber-Greene Co. v. Blaw-Knox Company,* 239 F.2d 774, 778 (6th Cir.1957); *Product Engineering and Manufacturing, Inc. v. Barnes,* 424 F.2d 42 (10th Cir.1970); *see also* Rule 3, Fed.R.Civ.P. The Circuit recognized that exceptions to the "first to file" rule exist, *see O'Hare, supra,* but found them inapplicable. The Circuit held

further that the appropriate method for resolving the question of venue, the issue which gave rise to the Plaintiffs' motion to enjoin the federal action in New Mexico and the Defendants' motion to enjoin this action, was for each party to file the appropriate venue motion with their respective courts. *Hospah Coal Co., supra, citing Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). The Santa Fe defendants sought to appeal this decision; their Petition for Certiorari was filed with the United States Supreme Court April 27, 1982, and denied by that Court June 1, 1982. Thus, at this stage of the litigation there are four lawsuits pending: the Texas action; two suits in the New Mexico District Court; and the New Mexico state court action.

### 28 U.S.C. § 1404(a)

In an antitrust action a plaintiff's "choice of forum is entitled to particular respect" and consequently the defendant's burden in establishing that the action should be transferred heavier than in other types of actions. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 89 F.R.D. 497, 500 (C.D.Cal.1981). In determining whether Defendants in this case have met their burden the Court has looked at the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). Further, in determining whether this matter should be transferred the court has looked at all of the claims alleged and has attempted to forecast how the case will be tried, *i.e.,* the evidence and witnesses needed to resolve each issue.

### Convenience of the Parties

At the outset it should be noted that the nexus between this suit and Texas is slight: one, Plaintiff TUC's principal place

of business is in Dallas, Texas; two, Defendant Thercol, while organized to develop the coal reserves in New Mexico, is a Texas joint venture; three, according to Plaintiffs, much of the contract negotiations between Plaintiffs and Defendants alleged to give rise to the illegal contracts took place in Texas; and four, AT & SF is a common carrier and has engaged in the business of transporting goods in Texas. As will be seen, while the alleged conspiracy has a nexus with Texas, it is equally clear Plaintiffs' other claims of monopolization, attempted monopolization and fraud, as well as Plaintiffs' claim the Chaco-Thercol contract is unenforceable, have no relationship with Texas, in contrast to their direct and substantial nexus with New Mexico.

By contrast, all of the parties have some presence in New Mexico; Chaco (a subsidiary of TUC and the contracting party) has its principal place of business in New Mexico. SFI is a holding company whose subsidiary SFM (the parent of Hospah) has its principal place of business in New Mexico; neither SFI nor SFM have any facilities, officers or employees in Texas. As noted AT & SF conducts business in Texas and New Mexico, but it is AT & SF's alleged monopolization of rail services in New Mexico that is at issue in this suit. Thercol, organized to develop New Mexico coal reserves, is managed by Peabody which owns coal reserves and has mining production and distribution facilities in New Mexico. Finally, the three alleged co-conspirators, Hospah, Star Lake Railroad Company and Santa Fe Natural Resources, Inc., a subsidiary of SFI, all have their principal place of business in New Mexico and none of them transacts business, has facilities or officers in Texas. The Court is of the opinion that a transfer to New Mexico does not merely shift between the parties the relative inconvenience which attends all multistate litigation,[1] rather, a suit in New Mexico will be significantly less inconvenient for the Plain-

---

1. One factor in determining the convenience of the parties is the expression of their intention. Plaintiffs contend the venue selection clause in the Chaco-Hospah contract is inapplicable in this action on two separate grounds. First, the clause, at best, binds only Chaco and Hospah and Hospah is not a party to this action. Secondly, Plaintiffs claim a venue selection clause is inapplicable in antitrust actions as a matter of public policy. With regard to the latter argument the Court would point out that Plaintiffs seek damages and rescission of the

tiffs than a suit tried in Texas will be for the Defendants. *See American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 261 (W.D.Mo.1980).

### Relative Convenience of Witnesses

It is true, as Plaintiffs point out, that their claim of conspiracy may be tried primarily on the basis of the testimony of the parties' employees; but this is not true with regard to Plaintiffs' claims of monopolization and fraud, or Plaintiffs' claim the coal contracted for in the Chaco-Thercol contract could not be "commercially mined" and thus that contract is unenforceable. The Court is of the opinion numerous witnesses other than the parties' employees will be required to complete this litigation and these witnesses appear to be located primarily in New Mexico. Plaintiffs dispute Defendants' characterization of the nature of the litigation for purposes of their venue motion by claiming Defendants have raised spurious issues and unduly complicated the trial of the matter. This is a complex antitrust action and in determining venue the court cannot simply adopt a "simplest case" approach and *a priori* preclude Defendants right to put on their defense as they see fit. Accordingly, after reviewing Defendants' and Plaintiffs' submissions the Court is of the opinion the convenience of the witnesses who are not the parties' employees weighs strongly in favor of transfer to New Mexico. *See Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949 (9th Cir.1968); *American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. at 262.

### The Interests of Justice

The major factor in the court's decision to transfer this action is the pendency in New Mexico of two essentially identical actions involving the Plaintiffs and the Santa Fe Defendants in federal court and a related state action involving the Plaintiffs and Thercol. In light of the Tenth Circuit's decision the New Mexico action filed by SFI's et al. would not be a significant factor in resolving the issue of venue were it not for one crucial difference between that suit and this one: Hospah is a party Plaintiff to the Defendants' New Mexico action. In addition, while the Plaintiffs have constantly urged the Court to ignore their New Mexico lawsuit in resolving the issue of venue, the Court cannot ignore the fact that Hospah is joined as a party Defendant in that action as well. These facts are important precisely because Hospah has not been joined in the Texas action although a major part of the relief requested by Plaintiffs is directed toward nullifying a contract to which Hospah is one of the two principal parties.

Plaintiffs' requested relief makes it clear Plaintiffs' suit is primarily directed toward altering the existing contractual relations between Chaco and Hospah, and Chaco and Thercol. Defendants have moved to dismiss the action, *see* Rule 19, Fed.R.Civ.P., or to transfer the action, *see* 28 U.S.C. § 1404(a), on the grounds failure to join Hospah in this matter will give rise to multiple litigation; according to Defendants complete relief cannot be afforded Plaintiffs without Hospah's presence and subsequent litigation involving Hospah will be necessary to fully implement any judgment by this Court designed to render the Chaco-Hospah contract unenforceable.[2]

■ As a general rule in a suit to obtain relief from a contract all the parties thereto

Chaco-Hospah lease on grounds of common law fraud, yet there is no claim by Plaintiffs that the clause would not apply to this portion of the action were Hospah joined. *See, e.g. The Plum Tree, Inc. v. Stockment,* 488 F.2d 754 (3d Cir.1973). Thus Plaintiffs seek to litigate the validity of the Chaco-Hospah coal lease without joining Hospah in a suit in which the clause would appear to apply to at least some of the claims. The Court is of the opinion transfer of this action is warranted without direct recourse to the contractual venue selec-

tion clause, but the difficulties inherent in determining its enforceability reflect the peculiar venue problems attendant upon this lawsuit.

**2.** Defendants have also sought dismissal of this action on the grounds Hospah will be prejudiced by disposition of this matter in its absence. *See* Rule 19(a)(2)(i). Plaintiffs contend Hospah's interests are fully protected by the present Defendants rendering Rule 19(a)(2)(i), Fed.R.Civ.P., inapplicable. *See e.g., Doty v. St. Mary Parish Land Co.,* 598 F.2d 885, 887 (5th

are indispensable. *Mallow v. Hinde,* 12 Wheat 193, 25 U.S. 193, 6 L.Ed. 599 (1927) (Dismissal is mandated by equitable not jurisdictional considerations.) Plaintiffs seek direct relief from the Chaco-Hospah contract and thus Hospah, clearly a party to be joined if feasible, is indispensable to avoid multiple litigation unless the court can fashion the full relief requested by Plaintiffs in Hospah's absence. Rule 19(a) & (b), Fed.R.Civ.P. Hospah's status as a joint tort-feasor is sufficient to render it a party necessary to the granting of full relief, and does not, as a practical matter, negate Hospah's status as a potentially indispensable contracting party. *See Occidental Petroleum Corp. v. Buttes Gas and Oil Co.,* 331 F.Supp. 92, 105–106 (C.D.Cal.1971), *cert. denied,* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972); *S.P.A. Ricordi Officine Grafiche v. World Art Reproductions Co.,* 22 F.R.D. 312 (S.D.N.Y.1965) (a co-conspirator is an indispensable party when needed to avoid multiple litigation or allow adequate relief.)

■ Plaintiffs contend that effective relief requires directly voiding or, alternatively, enjoining enforcement of, the Chaco-Hospah agreement and the court may do so despite the effect of such a judgment on a non-party principal to the contract. Plaintiffs erroneously assume an injunction issued in this case will directly bind non-party Hospah without further litigation, but an injunction only directly reaches the parties to the lawsuit. *Bethell v. Peace,* 441 F.2d 495 (5th Cir.1971).

Although there are three exceptions to this general rule, none has been raised directly in this lawsuit by Plaintiffs, and, even if raised, the question of the applicability of each to Hospah will require additional litigation in which Hospah is joined. The first exception is the privity exception: parties in privity with Defendants may be bound by the judgment under principles of

res judicata. *See LeTourneau Co. of Georgia v. N.L.R.B.,* 150 F.2d 1012 (5th Cir.), *rev'd on other grounds;* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). Plaintiffs have not raised (indeed, without Hospah Plaintiffs could not raise) the privity exception for resolution in this suit. This issue will most likely be raised offensively in a suit to enforce the judgment or injunction against Hospah, or alternatively, defensively should Hospah seek to enforce its contract rights against Chaco. Either way the binding effect of a judgment or injunction against the Santa Fe Defendants or Hospah under a theory of privity is an issue whose resolution requires Hospah's presence. Secondly, under Rule 65(d), Defendants' agents are bound by an injunction to the extent of their agency, but a corporate agent (for example, a subsidiary) is bound by an injunction against his principal only when acting in that capacity. Plaintiffs, despite various accusations, have not pled or pursued this theory. There is no claim Hospah was acting solely as the alter ego of any of the Santa Fe defendants, *see Berger v. Columbia Broadcasting System, Inc.,* 453 F.2d 991 (5th Cir.1972), *cert. denied,* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972); *accord Allegheny Airlines, Inc. v. United States,* 504 F.2d 104 (7th Cir.1974), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975), or that Hospah's conduct binds any of the Santa Fe defendants as a party to the Chaco-Hospah contract, under the general principles of agency law. *See Milligan v. Anderson,* 522 F.2d 1202 (10th Cir.1975); *Fitz-Patrick v. Commonwealth Oil Company,* 285 F.2d 726 (5th Cir. 1960) (A parent corporation may be held on the contract obligations of its subsidiary under certain circumstances.). There is no claim in this lawsuit that Hospah acted solely in an agency capacity in executing the Chaco-Hospah contract; none of the

Cir.1979); *PepsiCo., Inc. v. FTC,* 472 F.2d 179, 187 (2d Cir.1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973). Where the issue before the court is whether the absent parties' interests, here Hospah's interest in the Chaco-Hospah contract, may solely as a "practical matter" be affected, the identity of inter-

est between a parent corporation and its subsidiary offers sufficient protection. *Id.* This is not the case, as will be seen, where the court's judgment is designed to have a substantial, binding legal impact on the non-party's contractual rights.

parties dispute the fact that under principles of contract law Hospah is the principal party to the contract.

The third exception is provided by Rule 65(d), Fed.R.Civ.P.: an injunction is binding upon those "in active concert" with the party defendant. This exception is available in a very limited number of cases:

> The only occasion when a person not a party [to the lawsuit] may be punished, is when he has helped to bring about, not merely what the decree has forbidden, . . . but what it has the power to forbid, an act of the party. This means that the respondent must either abet the defendant, or must be legally identified with him.

*Alemite Mfg. Corp. v. Staff,* 42 F.2d 832 (2d Cir.1930). It is axiomatic that a finding in this action that Hospah is a co-conspirator does not bind Hospah, a non-party; any attempt to secure a contempt order on this basis should Hospah seek to enforce its contract will require an enforcement proceeding to which Hospah must be a party. *See Computer Searching Service Corporation v. Ryan,* 439 F.2d 6 (2d Cir.1971), *cert. denied,* 404 U.S. 871, 92 S.Ct. 62, 30 L.Ed.2d 115 (1972); *United States Pipe and Foundry Company v. N.L.R.B.,* 398 F.2d 544 (5th Cir.1968); *Teas v. Twentieth Century Fox Film Corp.,* 413 F.2d 1263 (5th Cir.1969). In all three cases, *Computer Searching Service, United States Pipe and Foundry,* and *Teas,* an enforcement proceeding was

deemed necessary to determine whether the party, who either was not joined in the original litigation or was joined solely for purposes of determining the scope of the injunction, falls within the scope of Rule 65(d). "Agents" or entities "in active concert" with the named defendants need not be joined in the original suit for injunctive relief, but it is equally clear that "complete relief" cannot be finally accorded Plaintiff absent an enforcement proceeding in which Hospah is joined as a Defendant. The injunctive relief sought by Plaintiffs which includes an injunction binding upon Hospah cannot be finally ordered in this litigation. *See* Rule 19; accord 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1604 at page 35.[3]

As an alternative to an injunction directly prohibiting enforcement of the Chaco-Hospah contract, Plaintiffs propose equitable relief which would require the Santa Fe defendants to assume all of Chaco's rights and obligations under the Chaco-Hospah contract. This procedure would not avoid the problem outlined above; substituting the Santa Fe defendants for Chaco directly and substantially effects non-party Hospah's contract rights. This remedy does not fall within the class of cases cited by Plaintiffs in which a corporate defendant is ordered to divest itself of its assets, *i.e.,* a subsidiary, or in which a constructive trust is imposed upon the corporate defendants' assets, including the stock of a wholly

**3.** Plaintiffs cite numerous antitrust cases in support of their claim that injunctive relief may issue despite its effect on contracting parties not before the court. Plaintiffs' cases support the following general rule: Plaintiff's rights may be vindicated by restraining the unlawful actions of the defendant even though the restraint prevents or prohibits the defendant from performing his contract with a third party. *See United States v. National Lead Co.,* 63 F.Supp. 513 (S.D.N.Y.), *aff'd* 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947); *Allen Bradley v. Local Union No. 3 I.B.E.W.,* 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945); *Ohio-Sealy Mattress Manufacturing Co. v. Sealty, Inc.,* 669 F.2d 490 (7th Cir.1982). These cases follow a pattern: Plaintiff seeks relief from the anticompetitive effect of a contract entered into between the defendant and a third party by enjoining defendants from enforcing or per-

forming the contract. The Supreme Court in *National Licorice Co. v. N.L.R.B.,* 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940) explained why the absent contract parties need not be joined. The court expressly recognized that the action does not bind the absent third parties; the absent parties' contract rights are not adjudicated. According to the Supreme Court in *National Licorice* the injunction runs only against the defendant precluding the defendant from taking any benefit under the contract. *Id.* The case before this Court does not fit within the rule set forth in *National Licorice.* Here it is plaintiff, not defendant, who is a party to the disputed contract and, more importantly, plaintiff seeks to directly adjudicate the absent party's contractual rights. *See American Motor Inn, Inc. v. Holiday Inns, Inc.,* 521 F.2d 1230, 1245 n. 42 (3d Cir.1975).

owned subsidiary. *See United States v. Griffith,* 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); *Schine Chain Theatres, Inc. v. United States,* 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245 (1948). In *United States v. Crescent Amusement Co.,* 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160 (1944), the court carefully distinguished between an order of divestiture which is solely addressed to the parent corporation's independent and legally separate right to control and manage its assets as it sees fit and an order, for example, an injunction prohibiting the voting of stock, which directly effects the subsidiary. *Id.; cf. Gertner v. Hospital Affiliates Int'l Inc.,* 602 F.2d 685 (5th Cir.1979). (The court imposed a constructive trust upon the defendant's assets in the form of its subsidiary stock, but the court recognizing the important legal distinction between parent and subsidiary refused to impose a constructive trust directly upon the subsidiary contrary to plaintiff's request.)

Finally, Plaintiffs claim effective relief can be fashioned in the form of a damage award.[4] While it is true such a remedy can be fashioned without Hospah's presence, *see Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), the legal availability of the remedy of damages in this lawsuit is offset by the likelihood the Plaintiffs cannot prove the amount of such damages for the entire several decades into the future which the contract runs with sufficient specificity. The Court is of the opinion that there is a significant and troublesome likelihood that complete relief in the form of damages will not be available to the parties in this suit.

There is a substantial likelihood proceeding with this action in Texas will give rise to multiple litigation. This can be avoided by transferring this action to New Mexico where Hospah can be joined; such a transfer clearly supports the general policies underlying Rule 19, Fed.R.Civ.P., and 28 U.S.C. § 1404(a). (The transfer is undertaken here to avoid a multiplicity of litigation, a clear point of overlap between Rule

19 and 28 U.S.C. § 1404(a); rather than order a dismissal pursuant to Rule 19 the Court has exercised its equitable discretion in fashioning a remedy under 28 U.S.C. § 1404(a) and *Aguacate Consolidated Mines, Inc. v. Deeprock, Inc.,* 566 F.2d 523 (5th Cir.1978)). Accordingly, this Court is of the opinion that the interests of justice, taken in conjunction with the other factors set forth above, strongly favor, if not mandate, transfer of this action to New Mexico where Hospah has been joined. *Cf. Unico Industrial Corporation v. S.S. Andros City,* 323 F.Supp. 896, 897 (S.D.N.Y.1971); *McGraw-Edison Company v. United States Fidelity & Guaranty Company,* 322 F.Supp. 1049 (E.D.Wis.1971) ("The ability to implead a party in the transferee forum who may be liable is an important consideration in determining a motion to transfer." *Id.* at 1051). *See also Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia R. Co.,* 411 F.2d 320 (5th Cir.1969); *Bank of Texas v. Computer Statistics, Inc.,* 60 F.R.D. 43 (S.D.Tex.1973); *Continental Grain Co. v. The FBL,* 585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) (Courts should seek to conserve judicial resources and avoid multiplicity of litigation).

### *Thercol and Peabody*

While the preceding analysis has focused primarily on Plaintiffs' claims against the Santa Fe defendants the Court is of the opinion the entire case should be transferred to New Mexico. *See Sundance Leasing Co. v. Bingham,* 503 F.Supp. 139, 140–141 (N.D.Tex.1980).

The Motions to Transfer are GRANTED and this case is TRANSFERRED to the United States District Court for the District of New Mexico at Albuquerque. All other pending motions appear to be moot and are therefore DENIED.

SO ORDERED.

---

4. The remedies set forth in *Gertner, supra,* a constructive trust imposed on defendant's assets, are akin to a damage action and can be similarly analyzed.