# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3064

_____

Cynthia E. Canady, Marva Jean    *
Saunders, both parties individually and  *
representing a class of similarly situated *
persons; Mischelle A. Greer; Jimmy D.  *
Hunt; Tamara A. Hunt; Kim Y.     *
Nickerson; Esther E. Moten; Kerry L.  *
Butler; Nadine Farris; Charles    *
Lockridge,    *
   *
    Plaintiffs-Appellants.    *
   *
Coleman McClain; Evalin McClain;  *
John Hammonds; Alma Hammonds;  *
Sara Kenner; Clarence Kenner,    *
   * Appeals from the United States
    Intervenor Plaintiffs-Appellants.  * District Court for the
   * Western District of Missouri
    v.    *
   *
Allstate Insurance Company; American  *
Economy Insurance Company; American*
Family Mutual Insurance Company;  *
American States Insurance Company;  *
American States Preferred Insurance  *
Company; Farm Bureau Town and    *
Country Insurance Company; Farmers &*
Merchants Insurance Company; Farmers*
Insurance Exchange; Federal Insurance  *
Company; Fire Insurance Company;  *
Liberty Mutual Insurance Company;  *
Mid-Century Insurance Company;  *
Pacific Indemnity Insurance Company,  *
   *

          Defendants-Appellees.       *
                                                                        *

Prudential Property and Casualty    *
Insurance Company,                 *
                                                                         *
          Defendant.              *
                                                                         *

Safeco Insurance Company; Shelter   *
General Insurance Company; Shelter   *
Mutual Insurance Company; State    *
Farm Fire & Casualty Company,     *
State Farm General Insurance Company,*
Vigilant Insurance Company; Old     *
Reliable Insurance Company; Sea     *
Insurance Company of America; Sun   *
Insurance Office of America, Inc.,    *
                                                                        *
          Defendants-Appellees.       *
                                                                         *

_____

No. 99-3193

_____

Marva Jean Saunders; Cynthia E.    *
Canady; Mischelle A. Greer;        *
Coleman Douglas McClain;        *
Evalin Elaine McClain; Kerry L.     *
Butler; Kim Yvette Nickerson;      *
Tamara A. Hunt; John Henry       *
Hammonds; Esther Elaine Moten,    *
                                                                        *
          Plaintiffs-Appellants,       *
                                                                         *
          v.                       *
                                                                          *

Farm Bureau Town and Country     *

Insurance Company,                          *

                                            *

        Defendants-Appellees.               *

                                            *

Prudential Property and Casualty            *

Insurance Company,                          *

                                            *

        Defendant.                          *

                                            *

Liberty Mutual Insurance Company;           *

Safeco Insurance Company of                 *

America; American Economy                   *

Insurance Company; American                 *

States Preferred Insurance Company;         *

Federal Insurance Company; Pacific          *

Indemnity Insurance Company;                *

Vigilant Insurance Company;                 *

American Family Mutual Insurance            *

Company,                                    *

                                            *

        Defendants-Appellees.               *

                                            *


_____

No. 99-3197

_____

Marva Jean Saunders; Cynthia E.             *

Canady; Mischelle A. Greer;                 *

Coleman Douglas McClain;                    *

Evalin Elaine McClain; Kerry L.             *

Butler; Kim Yvette Nickerson;               *

Tamara A. Hunt; John Henry                  *

Hammonds; Esther Elaine Moten,              *

                                            *

        v.                                  *

                                            *

Allstate Insurance Company;                        *
American Family Mutual Insurance              *
Company, Farmers Insurance                       *
Exchange; Fire Insurance                            *
Exchange; Mid-Century Insurance            *
Company; Shelter General Insurance         *
Company; Shelter Mutual Insurance         *
Company; State Farm Fire & Casualty      *
Insurance Company; State Farm                  *
General Insurance Company,                        *
                                                                       *
          Defendants-Appellees.                       *

_____

Submitted:   March 13, 2000

Filed:   March 8, 2002
_____

Before McMILLIAN and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.
_____

McMILLIAN, Circuit Judge.

        This matter began in 1996 with a class action complaint filed in the United States District Court for the Western District of Missouri by a group of homeowners in minority neighborhoods seeking federal class action certification pursuant to Federal Rule of Civil Procedure 23.   The original plaintiffs alleged that several insurance companies had violated the Civil Rights Acts of 1866, 1870, and 1871, 42 U.S.C. §§ 1981, 1982 and 1985(3), and the Fair Housing Act, 42 U.S.C. § 3601 *et*

_____

        [1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

-4-

*seq.*, by engaging in discriminatory redlining practices.[2]  See Canady v. Allstate Ins. Co., No. 96-0174 (W.D. Mo. June 19, 1997) (Canady I) (Gaitan, J.), *aff'd*, 162 F.3d 1163 (1998) (per curiam), *cert. denied*, 119 S. Ct. 871 (1999).    The district court denied class certification, and the Eighth Circuit affirmed.  See Canady v. Allstate Ins. Co., 162 F.3d 1163 (1998) (per curiam) [hereinafter "Canady I Appeal"]. Essentially the same group of homeowners [hereinafter "appellants"], in various combinations, subsequently filed related litigation in both federal and Missouri state court.

On the present appeal, one of the original defendants moved to enjoin appellants from relitigating in Missouri state court certain issues previously decided by this court.   The United States District Court[3] for the Western District of Missouri issued a final order in favor of the insurance companies, permanently enjoining appellants from prosecuting any action against multiple, unrelated defendants in any court based upon the same allegations as those raised in the prior district court ruling on the matter.  See Canady v. Allstate Ins. Co., No. 96-0174 (W.D. Mo. June 24, 1999) (Canady II).  As a consequence of the injunction, the district court dismissed two state court cases with prejudice and denied all pending federal motions as moot. See Saunders v. Allstate Ins. Co., No. 99-0137 (W.D. Mo. June 28, 1999); Saunders v. Farm Bureau Town & Country Ins. Co., No. 99-0139 (W.D. Mo. June 28, 1999).

---

[2]Appellants define insurance redlining as an industry-wide practice in which insurance companies refuse to provide standard or comprehensive homeowners' insurance for homes located in "high risk" minority neighborhoods, or only provide homeowners' insurance in minority neighborhoods at much higher premiums or with far worse terms and conditions than insurance available for homes located in "low risk" predominantly white neighborhoods.

[3]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

For reversal, appellants argue that the district court (1) violated the Anti-Injunction Act by enjoining prosecution of state law claims in state court arising from the same issues as a case dismissed without prejudice in federal court, (2) violated the All Writs Act by enjoining prosecution of state law claims in state court when the risk of harm to appellants outweighed the risk of harm to appellees, and (3) erred in exercising federal subject matter jurisdiction over a class action complaint based strictly on state law claims, with non-diverse parties, and seeking damages below the jurisdictional minimum of $75,000. For the reasons discussed below, we affirm the order of the district court.

**Background**

On February 14, 1996, sixteen individual plaintiffs brought a class action against twenty-three insurance companies in the United States District Court for the Western District of Missouri, seeking class action certification for their claims pursuant to the Civil Rights Acts of 1866, 1870, and 1871, 42 U.S.C. §§ 1981, 1982 and 1985(3), and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* These plaintiffs alleged that the insurance companies discriminated against a class of homeowners in minority neighborhoods by their redlining practices, which damaged the homeowners indirectly by making homeowners' insurance either unavailable, prohibitively expensive, or qualitatively worse for houses located in "high risk" minority neighborhoods, which resulted in lower property values for homes located in those neighborhoods.

On June 19, 1997, after three months of discovery, the district court denied the motion for class certification on the grounds that (1) the proposed class definition of "neighborhood" as measured by postal zip code was overbroad, because no evidence indicated that every person living in a predominantly minority zip code suffered injury in fact; (2) the claims failed to fulfill the commonality and typicality requirements of Fed. R. Civ. P. 23(a), because there was no single defendant or

several defendants acting in concert; and (3) plaintiffs did not have standing to bring suit against multiple, unrelated insurance companies in the absence of an alleged conspiracy. See Canady I. The district court dismissed the complaint without prejudice, leaving each individual plaintiff in the proposed class free to refile against each defendant or defendants with whom he or she could assert direct injuries.

The Canady I plaintiffs appealed, and this court affirmed the district court's dismissal of their complaint on July 6, 1998. See Canady I Appeal, 162 F.3d at 1163. In August 1997, several of the original plaintiffs, in various combinations, filed ten new similar class action complaints in federal court against individual insurance companies or groups of related insurance companies. These complaints asserted essentially the same claims as in Canady I[4] and were stayed pending the outcome of this appeal.[5]

On January 19, 1999, ten of the original plaintiffs from Canady I filed two new class actions in Missouri state court, see Saunders v. Allstate Ins. Co., et al.,

_____

[4]The August 1997 class action complaints, as well as the corresponding amended complaints filed on March 1, 1999, proposed the same class definition sought in Canady I and alleged the same indirect injuries. None of the original Canady I plaintiffs filed an individual complaint alleging individual and direct grievances against an individual insurance company.

[5]See Saunders v. Farmers Ins. Exch., No. 97-1104 (W.D. Mo. Sept. 14, 1999) (order granting stay pending the outcome of the current case); Saunders v. State Farm Fire & Cas. Co., No. 97-1140 (W.D. Mo. Sept. 14, 1999) (same); Kenner v. Safeco Ins. Co., No. 97-1021 (W.D. Mo. Sept. 14, 1999) (same); Greer v. Allstate Ins. Co., No. 97-1138 (W.D. Mo. Sept. 14, 1999) (same); McClain v. Shelter General Ins. Co., No. 97-1139 (W.D. Mo. Sept. 14, 1999) (same); McClain v. American Economy Ins. Co., No. 97-1019 (W.D. Mo. Sept. 14, 1999) (same); Canady v. Federal Ins. Co., No. 97-1141 (W.D. Mo. Sept. 14, 1999) (same); Canady v. Farm Bureau Town & Country Ins. Co., No. 97-1121 (W.D. Mo. Sept. 14, 1999) (same); Hammonds v. Prudential Property & Cas. Co., No. 97-1016 (W.D. Mo. Sept. 14, 1999) (same).

No. 99-CV-0632 (Mo. Cir. Ct. Jackson County filed Jan. 19, 1999) (class action petition); Saunders v. Farm Bureau Mut. Ins. Co., et al., No. 99-CV-0633 (Mo. Cir. Ct. Jackson County filed Jan. 19, 1999) (class action petition) (collectively "Saunders"), based on the same factual allegations as Canady I, but only alleging violations of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.040 *et seq.* These plaintiffs are the appellants in the present appeal. Each action named nine defendants from the Canady I action, totaling eighteen different defendants, with one non-diverse defendant in each action. The defendants immediately removed the two state actions to federal court on the basis of diversity, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Each defendant filed motions to sever appellants' claims against them from those against the other defendants and to consolidate the severed claims with their respective claims in the ten refiled actions of August 1997 currently pending in federal court. Appellants then filed a motion to remand the removed actions to state court, and declined to respond to the motions to sever and consolidate on the ground that the federal court lacked jurisdiction to rule on those motions.

On February 15, 1999, appellee Liberty Mutual Insurance Company filed a motion in federal court to permanently enjoin appellants from proceeding in a state court action against it pursuant to the All Writs Act, 28 U.S.C. § 1651, on the ground that appellants cannot prosecute claims that were already adjudicated and conclusively rejected in this court's prior ruling in Canady I. Appellants opposed the motion, arguing that the proposed injunction was prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283, and that the injunction was not supported by an equitable showing of irreparable harm. On June 24, 1999, the district court granted the motion and enjoined appellants from prosecuting any action against multiple, unrelated defendants in any court based upon the same allegations as those raised in Canady I. See Canady II, slip op. at 18. As a result, the district court ordered that the state court cases be dismissed with prejudice and denied all pending federal motions as moot. See Saunders v. Allstate Ins. Co., No. 99-0137 (W.D. Mo. June 28, 1999); Saunders

-8-

v. Farm Bureau Town & Country Ins. Co., No. 99-0139 (W.D. Mo. June 28, 1999) (dismissing state court cases and denying all pending federal motions as moot). This appeal followed.

**Discussion**

A.  Federal Subject Matter Jurisdiction

As a threshold matter, we must examine whether there is federal subject matter jurisdiction in the present case.  Appellants consistently have contended that the Saunders cases should not have been removed to federal court under diversity jurisdiction.  Appellants renew their objection to diversity jurisdiction in the present appeal because their motion to remand was rendered moot by the district court's injunction.  We review federal subject matter jurisdiction *de novo*.  See V S Ltd. P'ship v. HUD, 235 F.3d 1109, 1112 (8th Cir. 2000).

The district court based its jurisdiction to issue an injunction on the powers granted to it by the All Writs Act, finding that "it clearly has jurisdiction to issue an injunction to protect an issue necessarily decided in a prior case."  Canady II, slip op. at 4.  We agree.  The current action on appeal was initiated by appellee Liberty Mutual, a defendant in Canady I, who sought an injunction against any federal or state court proceedings in conflict with the ruling in Canady I pursuant to the All Writs Act.  28 U.S.C. § 1651 (enabling federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions").  The judgment protected by the injunction is the judgment in Canady I, which was properly issued in federal court, as it is undisputed that appellants properly filed their original class action complaint in federal court.  As long as the original lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction to remove any subsequent state law action to federal court for purposes of applying the All Writs Act.  See Xiong v. Minnesota, 195 F.3d 424, 426-27 (8th Cir. 1999) (Xiong) (holding that removal to

-9-

federal court was proper for claims asserted under All Writs Act); see also NAACP v. Metropolitan Council, 144 F.3d 1168, 1171 (8th Cir. 1998) (NAACP II) (concluding that federal court properly exercised removal jurisdiction over state law claims pursuant to the All Writs Act).[6]  Consequently, we hold that the district court properly asserted jurisdiction under the All Writs Act over the present dispute in order to protect its prior judgment.

---

[6]Appellants contend that the All Writs Act does not provide an independent basis for removal to federal court, relying primarily on precedent from other circuits to support their argument.  See, e.g., Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1379 (11th Cir. 1998) (holding that the All Writs Act does not provide an independent basis for supplemental federal jurisdiction in situations where "federal jurisdiction is otherwise wholly lacking").  However, those cases do not deal with the relitigation exception to the Anti-Injunction Act.  The relitigation exception requires that the claim or issue protected from future litigation by the All Writs Act relate back to a prior federal court decision.  For jurisdictional purposes, the Eighth Circuit requires that the injunction at issue must seek to protect a judgment properly obtained in federal court, but does not require an independent basis for federal subject matter jurisdiction when the All Writs Act is so invoked.  See Xiong, 195 F.3d 424; NAACP II, 144 F.3d 1168.

We further distinguish the present case, in which Liberty Mutual's federal claim was presented under the All Writs Act, from Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998), which prohibits removal of a state court action to federal court when res judicata or collateral estoppel acts as an affirmative defense to that action, on the reasoning that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint."  While we recognize that the All Writs Act is utilized as a tool to effectuate the relitigation exception to the Anti-Injunction Act, which deals with the underlying principles of res judicata and collateral estoppel, we note that those principles are not asserted as a defense, but rather as the federal claim presented in Liberty Mutual's petition for injunctive relief under the All Writs Act.

B.  Applicability of the Relitigation Exception to the Anti-Injunction Act

The Anti-Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment."  28 U.S.C. § 2283.  The Supreme Court has interpreted the Act as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions" included in the language of the statute.  Atlantic Coast Line R.R. v. Locomotive Eng'rs, 398 U.S. 281, 286-87 (1970) (Atlantic Coast Line); see also In re Federal Skywalk Cases, 680 F.2d 1175, 1181 (8th Cir. 1982).  The purpose of these exceptions is "to ensure the effectiveness and supremacy of federal law."  Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988) (Chick Kam Choo); see also Daewoo Elecs. Corp. of Am., Inc. v. Western Auto Supply Co., 975 F.2d 474, 477 (8th Cir. 1992) (Daewoo).

Appellees rely upon the statute's third "expressly authorized" exception, commonly known as the relitigation exception, which applies when an injunction is "necessary to protect or effectuate the federal court's judgments."  NBA v. Minnesota Prof. Basketball, Ltd. P'ship, 56 F.3d 866, 871 (8th Cir. 1995) (NBA); see  28 U.S.C. § 2283.  The relitigation exception rests upon the "well-recognized concepts of res judicata and collateral estoppel,"  Chick Kam Choo, 486 U.S. at 147, and therefore permits federal courts to "enjoin a state court from litigating claims and issues that the district court has already decided."  NBA, 56 F.3d at 872.  "We review the applicability of the relitigation exception de novo."  Id. at 871.  In reviewing the application of an exception to the Anti-Injunction Act, we resolve any doubts in favor of allowing state courts to proceed without interference from the federal courts.  See In re Federal Skywalk Cases, 680 F.2d at 1181 (citing Atlantic Coast Line, 398 U.S. at 297).

-11-

Appellants argue that application of the Anti-Injunction Act's relitigation exception was not warranted, asserting several arguments to undermine the res judicata or collateral estoppel effect of the Canady I litigation. Specifically, appellants claim that (1) because Canady I was dismissed without prejudice for lack of standing, there was no final judgment on the merits and therefore no res judicata effect, and (2) because the issues in Canady I and Canady II are not identical, there is no collateral estoppel effect.

*1. Res Judicata Effect of Canady I Litigation*

To begin, we reject appellants' argument that Missouri law, not the federal law of res judicata, should apply in this case because the Saunders cases were originally filed in Missouri state court. We have determined already that the relevant prior judgment was issued in federal court in Canady I, and therefore we apply federal res judicata law because "'it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'" Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997) (Hillary) (citing Semler v. Psychiatric Inst. of Wash., D.C., Inc., 575 F.2d 922, 930 (D.C. Cir. 1978)); see also NAACP v. Metropolitan Council, 125 F.3d 1171, 1174 (8th Cir. 1997) (NAACP I) (holding that "federal law governs res judicata effect of an earlier federal judgment based on federal law") (citing Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982)).

In applying the Eighth Circuit test for whether the doctrine of res judicata bars litigation of a claim, we examine whether (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was a final judgment on the merits, and (3) both cases involved the same cause of action and the same parties. Hillary, 123 F.3d at 1044 n.2.; NAACP I, 125 F.3d at 1174. Regarding the first criterion, we have concluded already that the district court properly exercised federal subject matter jurisdiction to render the Canady I judgment. However, appellants

-12-

primarily dispute the second criterion of the res judicata test, contending that a dismissal without prejudice for lack of standing does not constitute a final judgment on the merits and therefore does not trigger the doctrine of res judicata.

The relitigation exception is narrowly construed and allows a district court to enjoin litigation of only those claims and issues that the district court has already decided.  See Chick Kam Choo, 486 U.S. at 146 (holding that "the exceptions are narrow and are 'not [to] be enlarged by loose statutory construction'") (quoting Atlantic Coast Line, 398 U.S. at 287).  However, the relitigation exception may apply even if the merits of the case were never reached, provided that a critical issue concerning the case has been adjudicated properly.  See NBA, 56 F.3d at 872 ("The legislative policy that 'permits a federal court to enjoin state court action when a federal court has decided a suit on its substantive merits has equal force when a critical underlying issue unrelated to the substantive merits of the action has been litigated to finality.'") (quoting Baker v. Gotz, 415 F. Supp. 1243, 1250 (D. Del.), *aff'd*, 546 F.2d 415 (3d Cir. 1976) (unpublished opinion)).  In NBA, we determined that a preliminary injunction "carries enough significance and finality to invoke the relitigation exception" because (1) it "confers important rights and finally adjudicates the issue of preserving the status quo until the district court reaches the case's merits" and (2) it is appealable.  56 F. 3d at 872. Likewise, in the present case, a dismissal for lack of standing to bring a class action complaint may invoke the relitigation exception because (1) it finally adjudicates the issue of standing under these specific allegations, and therefore preserves the status quo unless standing is otherwise obtained and it becomes proper to reach the merits of the case, and (2) it is appealable and in fact has been fully litigated in this court in Canady I.  As a result, we hold that the relitigation exception may be warranted in this case, even though the merits of the case were never reached in Canady I.

In examining the third criterion of the federal res judicata inquiry, we consider whether both the Saunders cases and the Canady I litigation involved the same parties

-13-

and the same cause of action.  It is undisputed that the eighteen Saunders defendants also were named as defendants in Canady I .  Therefore, the parties are undeniably the same in both cases.  Further, we agree with the district court that the Saunders cases involved the same cause of action as the Canady I litigation.  "The same cause of action framed in terms of a new legal theory is still the same cause of action." NAACP I, 125 F.3d at 1174 (holding that a state law claim mirroring a Fair Housing Act claim had res judicata effect because it sought to redress the same wrong in both actions) (citing United States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994)); see also Engelhardt v. Bell & Howell Co., 327 F.2d 30, 32-33 (8th Cir. 1964) (holding that when "the basic wrongful acts pleaded in all actions appear to be the same," state and federal law claims constitute the same cause of action for res judicata purposes).  A side-by-side review of the class action complaints filed in the Saunders cases and Canady I reveals that the language formulating the cause of action in the Saunders cases is identical to the language comprising the counts in the Canady I litigation, except that the Saunders complaint supplants the provision of the Fair Housing Act, 42 U.S.C. § 3604(b), with the comparable provision of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.040.  The factual allegations underlying the causes of action are also identical.  We find that, although the legal theory advanced in the Saunders cases is phrased in terms of Missouri state law, the cause of action remains the same as the original Fair Housing Act claim presented in the Canady I litigation. Therefore, we hold that the district court did not err in relying on the res judicata effect of Canady I in applying the Anti-Injunction Act's relitigation exception to the Saunders cases.

2. *Collateral Estoppel Effect of* Canady I *Litigation*

Appellants additionally contend that, even if res judicata principles do apply, the principles of collateral estoppel should prevent application of the Anti-Injunction Act's relitigation exception.   See Chick Kam Choo, 486 U.S. at 14 (requiring principles of both collateral estoppel and res judicata to be satisfied in applying

-14-

relitigation exception to Anti-Injunction Act). We examine four factors to determine if collateral estoppel applies:[7]

> Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1168 (8th Cir. 1989).

Our prior discussion establishes that the second and third criteria have been met in this case. The fourth criterion has been satisfied as well, because the original Canady I plaintiffs were afforded a full and fair opportunity to be heard on the specific issue of whether they had standing to proceed in a class action against multiple, unrelated insurance companies in the absence of an alleged conspiracy and without alleging direct injuries. Only the first factor is in dispute on this appeal.

Appellants assert that the issues of Canady I are not identical to the issues precluded by the injunction of Canady II because: (1) the Saunders claims were asserted under Missouri law, which has more liberal joinder rules than federal law and allows joinder of multiple defendants even in the absence of concerted action,

---

[7]Although we rely upon federal law in analyzing the collateral estoppel issue, see Jaramillo v. Burkhart, 999 F.2d 1241, 1245 (8th Cir. 1993) (holding that to determine collateral estoppel effect of a federal civil rights action, "[f]ederal law governs the preclusive effect of a claim arising under federal law"), it is irrelevant whether we apply federal Eighth Circuit law or Missouri law, because both jurisdictions employ identical analyses. See In re Scarborough, 171 F.3d 638, 641-42 (8th Cir. 1999) (outlining Missouri collateral estoppel criteria).

-15-

and (2) the facts are not identical in that the cases covered different time periods and proposed using different methodology to determine class status. Specifically, appellants assert that the district court's discovery limitation orders prevented appellants from pursuing a more narrowly-focused class definition based on census tract information rather than zip codes.

At the outset, we note that these arguments rely upon differences in procedural rules. See Fed. R. Civ. P. 20 (classifying joinder as a federal procedural rule), 26(c) (authorizing a district court, as a matter of procedure, to create orders limiting discovery). However, because federal subject matter jurisdiction attaches pursuant to the All Writs Act, procedural matters in this case, as well as any future case impacting the prior judgment in Canady I, are governed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 81(c) (authorizing application of the Federal Rules to state court actions removed to federal court); see also Willy v. Coastal Corp., 503 U.S. 131, 134-35 (1992) (holding that the "expansive language" of Rule 81(c) "indicates a clear intent to have the [Federal] Rules . . . apply to all district court civil proceedings"); Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1255 (8th Cir. 1969) (Hiatt) (explaining that "[i]t is, of course, well-settled that in a suit based on [federal] jurisdiction the federal courts apply federal law as to matters of procedure"). As a result, any differences in procedural rules are irrelevant to the instant case. For this reason, we decline to consider the procedural discrepancies highlighted by appellants in our determination of whether the issues in the present appeal are identical to the issues presented in Canady I.

Appellants additionally argue that there is no identity of issues because the state law claims covered a different time period than the federal law claims. We find this argument unpersuasive. The difference in time periods does not affect the underlying nature of the claims at issue, and therefore the difference in time periods is irrelevant in determining whether the issues were identical. See Xiong, 195 F.3d

at 427 (holding that difference in claims alleging the same violations over different time periods are immaterial in determining identity of issues for purposes of applying the relitigation exception to the Anti-Injunction Act).

Because appellants do not assert any persuasive arguments to support their contention that the issues are not identical, and we have determined already that the claims asserted in both federal and state court are essentially the same, we hold that the district court did not err in finding that the collateral estoppel effect of the Canady I litigation justified application of the relitigation exception to the Anti-Injunction Act in this case.

*3. Scope of the Injunction*

We must be careful to stay within the parameters of the relitigation exception. Therefore, we review the record to ensure that the scope of the injunction is narrowly tailored to sufficiently protect the original federal judgment, without exceeding it. See Chick Kam Choo, 486 U.S. at 148 (requiring an injunction to be narrowly tailored to preclude relitigation only of issues already adjudicated by the federal court). To do so, we assess "the precise state of the record and what the earlier federal order actually said." Id.; see also In re SDDS, Inc., 97 F.3d 1030, 1037 (8th Cir. 1996).

In the present case, the earlier federal order in Canady I prohibited the prosecution of any action against multiple, unrelated insurance companies in the absence of an alleged conspiracy and without alleging direct injuries. The injunction at issue in this appeal mirrors that language, ordering that "plaintiffs are ENJOINED from prosecuting any action against multiple, unrelated defendants in any court based upon the same allegations as those raised in this case." Canady II, slip op. at 16

(emphasis in original). The district court chose this wording to preclude further adjudication of the already-resolved issue of standing to bring a class action against multiple, unrelated defendants in the absence of an alleged conspiracy or without alleging direct injury. Specifically, the district court outlined its rationale by stating that

> [i]t is clear that plaintiffs were only granted permission by the dismissal of the prior case to refile actions in which they allege direct injuries against properly joined defendants. By suing in state court when they did, plaintiffs obviously were attempting to circumvent this Court's prior ruling that they have no standing to bring suit against unrelated defendants. They were also attempting to defeat the diverse defendant's right to seek removal so as to prevent federal law from deciding the question of standing. Such duplicative litigation shall not be tolerated, and an injunction is appropriate under these circumstances to preclude plaintiffs from playing "judicial hopscotch" and frustrating orders of the Court.

Id. at 13. Because the district court confined the scope of the Canady II injunction to whether a class action may be brought against multiple, unrelated insurance companies in the absence of an alleged conspiracy and without alleging a direct injury, it stayed within the boundaries of the relitigation exception to the Anti-Injunction Act, and thus did not err in issuing the injunction prohibiting appellants from prosecuting any federal or state court proceeding attempting to relitigate the specific and narrowly-defined issue of standing.

Prior case law in this circuit supports this conclusion. In NBA, we affirmed an injunction only insofar as it prevented the state court from taking a different approach on issues previously decided in the district court's original decision. See 56 F.3d at 872. Similarly, in the present case we hold that the district court acted properly in issuing an injunction preventing the state court from taking a different approach on the issue of standing to pursue a class action in the absence of an alleged conspiracy

or without alleging direct injury. The injunction is not so broad as to foreclose the pursuit of *any* federal or state court action including claims and parties common to the already decided federal action. See id. at 872 (holding that pursuit of "a parallel state court lawsuit involving claims and parties common to the federal action does not justify the district court's intervention in state court proceedings"). On the contrary, appellants may attain standing under many circumstances, including the filing of individual suits, the successful allegation of a conspiracy by the named defendants, or the assertion of actual grievances. What appellants may not do is recycle the same claims and issues in different courts, hoping to achieve the result they desire.

This appeal is one of those rare cases in which the issues pursued in state court are essentially identical to the issues presented in the original federal litigation. Upon careful review of the complaints submitted in the Saunders cases with the original Canady I complaint, we find no perceivable difference in the issues presented. Each petition alleges that appellants, as a class, identified by the same definition, were harmed by the same redlining practices employed by the homeowners' insurance industry. Appellants may not file what is essentially the same action, albeit under different legal theories, in state court merely to obtain a more favorable result than the one already obtained in their first choice of forum. See Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1070 (8th Cir.) (reasoning that a federal injunction against state court proceedings would be warranted when "the new suit was merely a refiling of the old suit in 'an attempt to subvert the purposes of the [federal statute granting jurisdiction]'"), *cert. denied*, 519 U.S. 948 (1996).[8]

---

[8]Appellants argue that their injuries are indirect by nature, because the redlining practices in the insurance industry only have a negative impact when all the insurance companies engage in them, and that foreclosing the ability to pursue this action by joining multiple, unrelated defendants in state court, as opposed to federal court (which has already prevented them from pursuing on a theory of indirect injury), impermissibly extends the impact of the Canady I decision to state courts as

-19-

We find it dispositive that the district court based its injunctive relief on appellants' lack of standing to bring suit, because (1) lack of standing does constitute a final judgment for res judicata and collateral estoppel purposes,[9] and (2) standing is determined by procedural rules. See Nor-West Cable Comm. Partnership v. City of St. Paul, 924 F.2d 741, 746-47 (8th Cir. 1991) (classifying standing as an appealable procedural issue reviewed for clear error); see also Dresser v. Backus, 229 F.3d 1142 (4th Cir. 2000) (per curiam) (holding that because relitigation of issue was barred by collateral estoppel, res judicata determination of finality of judgment dismissed for lack of standing was not relevant); Summit Medical Assoc., P.C., v. Pryor, 180 F.3d 1326, 1334 (11th Cir. 1999) (holding that "although a district court's standing determination conclusively resolves a disputed question and settles an important issue separate from the merits of the case, courts have recognized that the issue of standing is not effectively unreviewable on appeal from final judgment"). As stated above, this case was brought properly in federal court pursuant to the All Writs Act, as will any future suit dealing with the exact same issues. As a result,

---

well as federal courts. Regardless, appellants chose to litigate their original claims in federal court, and thus they are bound by the res judicata and collateral estoppel effects of their original choice of forum. See Hiatt, 75 F.3d at 1260 (noting that a plaintiff must accept the limitations of choosing a federal forum rather than a state forum) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 376 (1978)).

[9] We recognize that denial of class certification alone does not constitute a final judgment on the merits sufficient to satisfy the res judicata principles underlying the relitigation exception to the Anti-Injunction Act. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978); White v. Cessna Aircraft Co., 518 F.2d 213, 215-16 (8th Cir. 1975); see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 134 F.3d 133, 146 (3d Cir. 1998) (holding that "denial of class certification is not a 'judgment' for purposes of the Anti-Injunction Act while the underlying litigation remains pending"); J.R Clearwater Inc. v. Ashland Chem. Co., 93 F.3d 176 (5th Cir. 1996) (holding that denial of class certification in still-pending federal action lacked sufficient finality to invoke relitigation exception to Anti-Injunction Act).

federal standing will always be determined by Article III and federal case law interpreting it. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (outlining the elements required to attain standing in federal court). Because standing is a procedural issue, and because all procedural issues regarding class action standing in the present case will be decided in federal court according to the Federal Rules of Civil Procedure, any discrepancies between state and federal procedural rules are irrelevant. As a result, we hold that the district court did not err in narrowly tailoring its injunction of state court proceedings concerning the issue of appellants' standing to bring a class action against multiple, unrelated insurance companies in the absence of a conspiracy or without alleging direct injuries.

## C. Applicability of the All Writs Act

While the relitigation exception to the Anti-Injunction Act provides a justification for disregarding the Anti-Injunction Act, a federal court must also possess positive authority to issue an injunction against state court proceedings. The All Writs Act provides this authority, and empowers a federal court to protect the res judicata and collateral estoppel effects of its prior judgments by enabling it to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. See In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 134 F.3d 133, 143 (3d Cir. 1998) ("If an injunction falls within one of [the exceptions to the Anti-Injunction Act], the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings.").

In addition to being permissible, an injunction must also be equitable in order for a federal court to issue it. See Chick Kam Choo, 486 U.S. at 151 ("the fact that an injunction may issue under the Anti-Injunction Act does not mean that it must issue"); Daewoo, 975 F.2d at 478 (an injunction must be equitable as well as

allowable under an exception to the Anti-Injunction Act). Appellants argue that, even if the relitigation exception to the Anti-Injunction Act does apply, appellees did not establish the four elements necessary for an equitable injunction under the All Writs Act, because (1) appellees' only injury of additional litigation expenses does not constitute irreparable injury; (2) the harm to appellees of additional litigation expenses does not outweigh the harm to appellants of the loss of their right to pursue claims in state court; (3) appellee Liberty Mutual failed to show that it would succeed on the merits of the case; and (4) the public has an interest in seeing the matter litigated.

We review the district court's grant of injunctive relief for an abuse of discretion. In re SDDS, 97 F.3d at 1040. We will reverse the district court's decision only if its conclusion derives from clearly erroneous factual or legal conclusions. See id. In determining whether injunctive relief is appropriate, we consider the Dataphase factors: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury caused by granting the injunction, (3) the probability of succeeding on the merits, and (4) the public interest. See id. (authorizing application of the Dataphase factors to questions regarding federal injunctive relief under the relitigation exception to the Anti-Injunction Act); see also Dataphase Sys. v. C L Sys., 640 F.2d 109, 113 (8th Cir. 1981) (establishing the factors necessary to permit injunctive relief) (en banc).

In re SDDS explicitly holds that (1) a party suffers irreparable harm when it is required to relitigate in state court issues previously decided in federal court, and (2) the deprivation of an opportunity to pursue the same issues in a state forum does not constitute a legitimate harm requiring a balancing of equities. 97 F.3d at 1040. Because the defendants in Canady I already successfully litigated the issues prohibited by the Canady II injunction, we may infer that the appellees in this action will likewise be successful. Moreover, "the public policy concerns of finality and

repose informing our res judicata jurisprudence strongly supports the protection of our previous judgment." Id. at 1041. Our discussion affirming the district court's application of the relitigation exception to the Anti-Injunction Act thoroughly explored the rationale for applying res judicata and collateral estoppel principles to the circumstances of this case, and we are motivated by that reasoning to support the injunction on public policy grounds. Thus, appellants' circumstances fail to satisfy the Dataphase criteria. As a result, we hold that the district court did not abuse its discretion in granting injunctive relief.

## Conclusion

For the reasons stated above, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.